GEORGE L. SNOW, in equity, *vs.* ANDREW PRESSEY.

Knox.    Opinion May 1, 1893.

*Mortgage.    Debt imperfectly described.    Evidence.    Insurance.*

Where the language of a written contract is susceptible of more than one meaning, it is allowable to take into consideration the situation of the parties and the circumstances under which it was made, in order to ascertain its true meaning.    The instrument may be read in the light of surrounding circumstances.

*Thus,* a mortgage securing "all other legal claims due said A and B," was held to include the individual debts due A, as well as the joint debts due A and B.

A mortgagor is not liable for insurance premiums paid by a mortgagee where the insurance is not procured, or the premiums paid, at the request or benefit of the mortgagor.

ON REPORT.

This was a bill in equity to redeem a mortgage.

(Abstract of bill).    "I.  That on the third day of March, 1874, the complainant was seized in fee of seven undivided eighth parts of a certain parcel of real estate therein described, situate in Rockland.

"II.  That on said third day of March, the complainant executed and delivered a mortgage of said real estate to one G. W. Candee and the defendant to secure payment of the sum of $4000 in four equal payments of $1000 each, in four, eight, twelve and sixteen months from the date thereof with seven per cent interest, according to the tenor of four promissory notes of the same date given by the complainant to said Candee and the defendant.

"III. .That on the first day of May, 1884, one Julius A. Candee, executor of said G. W. Candee, then deceased, conveyed and assigned to the defendant all the interest which said G. W. Candee had at his decease, and which said executor then had in and to said mortgage and notes.

"IV.  That on the 16th day of August, 1878, the complainant conveyed to the defendant all his right, title and interest in and to said premises, by his quit-claim deed and of that date appearing on its face to be absolute, and that the defendant then and

as part of the same transaction executed and delivered to the complainant a separate instrument of defeasance of the tenor following, to wit: 'Know all men by these presents, that I, Andrew Pressey of Brooklyn, Kings county, New York, in consideration of a conveyance of certain real estate this day made to me by George L. Snow of Rockland, in the county of Knox and State of Maine, to wit, a quit-claim of all of said Snow's interest in and to the premises described in a mortgage deed from said Snow to said Pressey and another, recorded in Knox registry of deeds in book 36, page 252, I do hereby covenant and agree with the said Snow and his heirs or legal representatives that on the receipt of the amount of the said mortgage claim of G. W. Candee of New York city and said Andrew Pressey, or an amount equal thereto, together with the interest thereon, with the amount of all other legal claims due said Candee and Pressey, I will re-convey the premises aforesaid to the said George L. Snow, his heirs or legal representatives, by a good and sufficient deed, including the interest of said G. W. Candee therein.

"'In witness whereof I have hereunto set my hand and seal this 16th day of August, A. D., 1878.

Andrew Pressey.    [L. S.]'

"V. That the defendant in the year 1878 entered into said premises and took possession, by complainant's consent, of an undivided portion thereof, to wit: one lime-kiln, a portion of the lime sheds and other buildings and structures, and wharves, and has remained in possession thereof ever since; and has received rents from other portions thereof.

"VI. That on the 11th day of November, 1887, the complainant demanded, in writing, of the defendant a true account of the amount due on each of said mortgages, and of the rents and profits, money expended in repairs and improvements, if any, and also the strip and waste committed upon the premises.

"VII. That the complainant has frequently requested the defendant to render such an account, and to pay over the amount received by the defendant above the amount due him, and to surrender said premises, all of which the defendant has refused to do.

(Prayer.) "That an account may be taken; that the defendant pay over such sum, if any, that he has received above the amount due him; that compensation be decreed for strip and waste; that the complainant may be allowed to redeem; that the defendant surrender said premises to the complainant, and release the same to him, on payment of the complainant of such amount, if any, as may be found to be due the defendant, and for other and further relief.

(Abstract of answer.) "I. Defendant admits the first and second allegations of the bill.

"II. Defendant claims that the mortgage to Candee and himself has been forever foreclosed.

"III. The defendant admits the third allegation of the bill.

"IV. Defendant denies that the quit-claim deed and instrument described in the fourth clause of the bill constituted a mortgage, and alleges that the quit-claim deed of August 16, 1878, was an absolute conveyance of the premises.

"V. Defendant admits that he has been in possession of the premises and has received the rents and profits thereof since August 16, 1878.

"VI. Defendant denies that he is under any obligation to account to the complainant."

The bill was sustained (82 Maine, 552,) and the following decree entered.

(Decree.) "At the December term, 1888, after hearing, it was decreed as follows, viz: 'That the bill be sustained, and that the defendant account for all rents and profits received by him from the premises described, or by any other person or persons by his order or for his use, or which he without his default might have received, and the case be sent to a master in chancery with directions to hear the parties, determine the amount with which the defendant is to be charged for such rents and profits, and all matters of account between the parties in relation to the mortgage debt, and make report thereof, with the amount, if anything, due on the mortgages.'"

At the same term A. R. Savage, Esq., was appointed master in accordance with the decree.

To the master's report both the complainant and the defendant excepted.

The following are extracts from the master's report bearing upon the points raised by the exceptions :

"I find that on the third day of March, 1874, the complainant mortgaged the property described in the bill to Gilead W. Candee and the respondent, who were then co-partners in business under the firm name of Candee & Pressey, to secure the payment of four thousand dollars.

"And it was agreed at the hearing, and I find, that there was due said Candee and Pressey on said mortgaged indebtedness, June 10, 1875, $3,782.60.

"I further find that said firm of Candee & Pressey was dissolved in 1875 or 1876.

"I find that April 13, 1875, the complainant was indebted to the estate of Israel Snow in the sum of $16,804.43 ; that at said complainant's request, and on his account, respondent individually purchased said indebtedness and paid therefor $6,721.77, it being forty per cent ; that respondent paid this amount of his own funds, but took an assignment of said indebtedness to Julius Candee and himself, he and the said Julius being then co-partners in the firm of Candee & Pressey.

"And I find that on account thereof the complainant became and was indebted to the respondent in said sum of $6,721.77 on said April 13, 1875.

"I find that subsequently, during the years 1875 and 1876, complainant shipped quantities of lime to the respondent's firm ; and that out of the proceeds of said shipments, the respondent retained :— 1875, April 30, $1000 ; 1875, May 26, $1000 ; 1875, August 19, $1000 ; 1876, August 4, $300 ; and rendered an account therefor to the complainant.

"At the hearing, the complainant claimed that no legal appropriation had ever been made by the parties of the said $3,300, and that it should be applied in the reduction of the mortgage indebtedness.

"But the respondent claimed, and I find, that said amounts so retained were legally appropriated at the time towards the

payment of the $6,721.77 advanced by respondent for complainant, April, 13, 1875.

"I find that August 16, 1878, complainant quit-claimed his interest in the premises in question to the respondent, and as a part of the same transaction the respondent gave back an agreement under seal [ante p. 409,] in which he covenanted and agreed with the complainant that on receipt of the mortgage indebtedness hereinbefore described, or an amount equal thereto, together with the interest thereon, with the amount of all other legal claims due said Candee and Pressey, he would reconvey the premises to the complainant. The complainant thereupon, on said August 16th, took possession of the premises, and has remained in exclusive possession thereof up to the time of the hearing.

"I find that August 17, 1878, Julius Candee assigned to the respondent all his interest in the Israel Snow indebtedness. The respondent claimed that he was in possession under a deed absolute in form, and under such circumstances that he might well believe and did believe himself to be, in fact, owner of the estate, subject only to an agreement to sell ; and I so find.

August 19, 1878, Gilead W. Candee and respondent were sued by the executors of one I. C. Abbott, on account of transactions of complainant as the agent of Candee and Pressey. The respondent claims that complainant was not their agent in fact, but that the said transactions related to the complainant's own business ; and I so find.

"September 25, 1878, respondent paid of his own funds $1100 to settle said suit, and I find that this was done at complainant's request and made him debtor to the respondent individually for said sum of $1100.

"I find that on May 1, 1884, the executor of Gilead W. Candee assigned to respondent the original mortgage, dated March 3, 1874." . . .

"Respondent claimed that under the agreement of August 16, 1878, he was entitled to charge the complainant the $6,721.77 paid by him for complainant on account of the Israel Snow indebtedness, and interest thereon. Respondent also claimed that under said agreement he was entitled to charge the $1100

paid after the making of the agreement, it being, to wit, September 25, 1878, on account of the suit of the executors of Abbott. That is, respondent claimed that under the agreement he was entitled to charge any sums due G. W. Candee and himself jointly, or any sums due either individually, whether due at the time of the making of the agreement, or afterwards before redemption.

"And complainant further claimed that the agreement was intended to secure G. W. Candee and respondent against any liability they might be under on account of a threatened suit of the estate of I. C. Abbott, to settle which respondent afterwards paid the $1100, as before stated.

"The firm of G. W. Candee and Pressy had been dissolved more than two years prior to August 16, 1878, and I find that the complainant was not indebted to them jointly on that date for any amount except the original mortgage indebtedness.

"Complainant claimed that the language in the agreement of August 16, 1878, was intended by the parties thereto to cover any amounts which Candee and Pressey might thereafterwards pay on account of the Abbott claim.

"Complainant claimed that said agreement should be construed to secure amounts legally due Gilead W. Candee and Pressey jointly, and not amounts due to either of them severally.

"If it be permissible to so affect the construction to be placed upon said agreement, I find and report for consideration of the court, that upon the evidence, and taking into account the situation of the parties and the surrounding circumstances, the parties to the agreement intended that it should secure the payments of the amounts which had been advanced by respondent on complainant's account by the Israel Snow indebtedness, and also to secure moneys to be paid thereafter by respondent on account of the Abbott claim as a condition precedent to a re-conveyance.

"Respondent claimed and testified that after the premises were conveyed by quit-claim deed August 16, 1878, he paid complainant $500 as consideration therefor, which he seeks now to charge against the estate. The complainant denies that $500, or any sum of money was paid.

"I find that said $500 was not in fact paid as a consideration for the purchase, and disallow the claim.

"The respondent in his account rendered charged himself with rents of land and lime-kiln, etc., as therein stated, and at the hearing it was agreed that he should be charged for additional lime-kiln rents as follows: 1880, $108.30; 1881, $95.67; 1882, $12.30; 1883, $90.44; 1884, $215.88; 1886, 24.92; 1887, $130.44; and for certain small amounts of lime burned, the dates for which are not given, $12.00.

"Complainant also claimed that respondent should charge himself $550, cash paid by Haviland and Pressey to the respondent in 1885, out of moneys due complainant, or his wife, for lime, and appearing on certain 'settlements,' so called, to wit: $200, August 19, 1884; $100, September 17, 1884; $50, September 26, 1884; $200, August 26, 1885.

"Inasmuch as I have otherwise charged the respondent with all rents received, or which he ought to have received, I disallow the claims.

"Respondent claims and I find, that he paid the several sums for insurance on the premises. . . .

"And I find that the first three items, . . . were paid by him for insurance while a mortgagee out of possession; that the remaining items were paid by him for insurance upon the property after he took possession.

"Respondent claimed to be allowed for these several sums paid for insurance, but I find that he did not procure the insurance or pay the premiums at the request of the complainant, nor for his benefit, and I disallow the claim.

"And having made these findings, I report them for the consideration of the court in the alternative as follows:

"If, under the agreement of August 16, 1878, respondent is not entitled to charge complainant in this proceeding for the amount advanced on his account to purchase the Israel Snow indebtedness, nor the amount advanced on complainant's account to settle the Abbott suit, as hereinbefore described, the account should be stated as follows: Amount found due defendant November 19, 1890, $117.04. Or, if under said agreement

respondent is entitled to charge for the advances made on account of the complainant to purchase the Israel Snow indebtedness, and not the advances made on account of the complainant to settle the Abbott suit, then I state the account as follows : Amount found due defendant November 19, 1890, $8,643.43. Or, if under said agreement the respondent is entitled to charge for the money advanced on account of the complainant to purchase the Israel Snow indebtedness, and the money advanced on account of complainant to settle the Abbott suit, then I state the account as follows : Amount found due defendant November 19, 1890, $10,894.39.

(Complainant's exception.) "1. For that the said master hath in and by his said report certified that he finds and reports for the consideration of the court, 'That upon the evidence, seasonably objected to by the complainant, and taking into account the situtation of the parties and the surrounding circumstances, the parties to the agreement [August 16, 1878,] intended that it should secure the payments of the amounts which had been advanced by respondent on complainant's account by the Israel Snow indebtedness, and also to secure moneys to be paid thereafter by respondent on account of the Abbott claim as a condition precedent to a re-conveyance.' Whereas the case is wholly without evidence upon the points to which such findings of the said master relate and there is no evidence in the case whatever to sustain the said findings of fact, and the same being made without evidence, are, therefore, wholly unwarranted and the said master ought not to have made said findings of fact. . .

"5. For that the said master hath in and by his third alternative finding in his said report certified that 'If under said agreement the respondent is entitled to charge for the money advanced on account of the complainant to purchase the Israel Snow indebtedness, and for the money advanced on account of complainant to settle the Abbott suit,' then he states the account between the parties as fully set forth in said report in such a manner as to show the amount due from complainant to respondent on November 19, 1890, to have been $10,894.39. Whereas the said master ought to have certified that he found that according

to the legal construction of said agreement the respondent was not entitled to charge either for the money advanced on account of the complainant to purchase the Israel Snow indebtedness or for the money advanced on account of the complainant to settle the Abbott suit, and further that the said respondent was not entitled in equity, upon the facts found and reported by the master, to charge the complainant in this proceeding for the amounts advanced on either of the two accounts last named or for any part of the same." . . .

*J. W. Symonds* and *J. O. Robinson*, for plaintiff.
*W. H. Fogler*, for defendant.

WALTON, J.    This is a bill in equity, the prayer of which is that the plaintiff may be allowed to redeem certain real estate held by the defendant by virtue of a deed absolute in form, but which, by reason of an instrument of defeasance executed at the same time, was, in contemplation of law, no more than a mortgage.

The court has already decided that the plaintiff is entitled to redeem, and the case has been sent to a master to ascertain the amount due.    (See *Snow* v. *Pressey*, 82 Maine, 552.)    And the case is now before the law court on exceptions to the master's report.

The principal contention is in relation to the interpretation of a single phrase, in the instrument of defeasance.    By that instrument the defendant (Pressey) agreed to reconvey to Snow the premises which the latter had that day conveyed to him, upon the receipt of the amount due on a mortgage which had before been given by Snow to him and G. W. Candee, "*with the amount of all other legal claims due said Candee and Pressey.*"

The contention is in relation to the meaning of the phrase "*all other legal claims due said Candee and Pressey.*"    The plaintiff contends that it can mean only joint claims.    The defendant contends that it was intended to include, and should be construed to include, debts due to him individually as well as debts due to him and Candee jointly.

The master (a good lawyer) has found (if it be permissible for him to so find) that it was the intention of the parties to secure the debts due from Snow to Pressey individually as well as the debts due to him and Candee jointly.

We think it was permissible for him to so find.

It often happens that the language of a written contract is susceptible of more than one meaning. And, in such cases, it is always allowable to take into consideration the situation of the parties and the circumstances under which the writing was made, in order to ascertain its true meaning. Or, as the idea is often expressed, the instrument may be read in the light of the surrounding circumstances. *Veazie* v. *Forsaith*, 76 Maine, 172 ; *Hartwell* v. *Insurance Company*, 84 Maine, 524.

And this rule has been appled with great liberality to mortgages in which the debts or other claims intended to be secured have been imperfectly, obscurely, or erroneously described.

In *Boody* v. *Davis*, 20 N. H. 140 (51 Am. Dec. 210), it was contended that the note produced did not correspond with the one described in the mortgage. The note described in the mortgage was said to be signed by four persons, naming them. The note produced was signed by five persons. It was claimed that this constituted a fatal variance. But, upon proof that the note produced was the one intended to be secured by the mortgage, the court held that the variance was immaterial.

In *Johns* v. *Church*, 12 Pick. 560 (23 Am. Dec. 651), the note was described in the mortgage as being for $236, but the note produced was for $256. Upon proof that the note produced was the one intended, the variance was held immaterial.

In *Hall* v. *Tufts*, 18 Pick. 460, the note secured by the mortgage was described as payable to Ebenezer Hall, 3rd. The note produced was payable to Ebenezer Hall, and was erroneously dated. "We can not doubt," said the court, "but that parol evidence may be admitted to prove that the note now produced was the one to which the mortgage referred."

In *Robertson* v. *Stark*, 15 N. H. 109, the mortgage described the contract secured thereby as signed by Jeremiah Eastman,

Junior, while it was in fact signed by a firm of which he was a member, and it was held a sufficient description.

But this is a rule intended only for the interpretation of contracts. It is not intended to enable the parties to make new contracts. It does not permit the parties to testify to their understanding of the meaning of the words used; and it is not applicable to contracts the meaning of which is clear, nor to words which will admit of but one meaning. It is applicable only to contracts in which the language used is fairly susceptible of more than one interpretation; and is then employed to enable the court to determine which of two or more possible meanings was the one really intended by the parties. And, when properly applied, it is a useful rule. It is, in fact, a necessary rule; for, without it, the decisions of the court in many cases would be but little better than guess-work. By its use, what was before obscure often becomes plain.

In the present case, we think the words, "with the amount of all other legal claims due said Candee and Pressey," as used in the instrument of defeasance, are fairly susceptible of more than one interpretation. They may mean claims due to them jointly, or they may mean claims due to them severally, or they may mean claims due to them jointly and severally. The master has found that they were intended to include claims due to Pressey individually as well as claims due to him and Candee jointly. We think it was competent for him to so find; and we are so well satisfied that the finding is correct, that, were it otherwise, we should be inclined to set it aside.

We have examined the master's report with care, and our conclusion is that none of the exceptions to it can be sustained. He has reported in the alternative three sums as due from the plaintiff to the defendant, and submitted to the court to determine which of the sums the plaintiff shall be required to pay in order to redeem the property covered by the mortgage. We are satisfied that it must be the larger sum, namely, $10,894.39. This was the amount due November 19, 1890. If the plaintiff redeems, interest on that sum must be added from that date.

*Decree accordingly.*

PETERS, C. J., LIBBEY, FOSTER and HASKELL, JJ., concurred.