CAPITAL CITY BANK, A CORPORATION, *Plaintiff in Error,* v. I. B. HILSON, *Defendant in Error.*

1. A declaration must show plainly and certainly all the circumstances material to the maintenance of the action, and if there be two intendments it will be taken most strongly against the plaintiff.

2. Where the terms of a contract appear on their face to be inserted for the benefit of one of the parties, he will be considered as having ·inserted such terms and as having chosen the language thereof; and any ambiguity in such language is, therefore, to be construed more strongly against the party making use of such language.

3. A contract to indemnify A from certain named obligations of the "C. P. Co and himself personally" covers *prima facie* only the joint debts of the C. P. Co. and A, and does not unaided support an action for the separate indebtedness of either.

4. Where in an agreement to indemnify and release B from certain obligations described as the obligations of A and B "personally," the word "and" will not be construed as meaning "or," except for strong reasons and in order to carry out the manifest intention of the parties.

This case was decided by the court En Banc.

Writ of error to the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the court.

*Neeley & Simmons,* for Plaintiff in Error;

*F. T. Myers* and *Blount & Blount & Carter,* for Defendant in Error.

HOCKER, J.—I. B. Hilson, called herein the plaintiff,

sued the Capital City Bank, a corporation, herein called the defendant, in an action at law, in the Circuit Court of Leon County in November, 1907, and recovered a judgment against the latter for $4,500.00 with interest at 8 % from May 29th, 1906, which is brought here by the defendant for review on writ of error.

The declaration as at first filed contained two counts. The first count is as follows:

"The plff. sues the deft. for and in consideration of the sale and delivery by plff. to it of a large amount of personal property exceeding in value $11,000 agreed by an instrument in writing which is hereto attached and made a part hereof, that is the deft. would indemnify and release the plff. from certain obligations of the Capital Publishing Co., a corporation, and of the plff. specified in said writing; that among said obligations specified was an obligation or indebtedness of the Capital Publishing Co., to a certain concern therein called 'Mergenthaler Company' for about the sum of sixty-five hundred dollars; that before the beginning of this suit the said obligation or indebtedness amounting to sixty-five hundred dollars became and was due and payable to the said concern, and plaintiff requested the deft to pay the same but that the defendant did refuse and has continued to refuse to pay of the said indebtedness more than the sum of two thousand dollars leaving due and unpaid the sum of forty-five hundred dollars, which the pltff has been compelled to pay and has before the institution of this suit paid to the said concern, whereby the deft has become and is indebted to pltff in the sum of forty-five hundred dollars."

The second count is like the first, except that the obligation or indebtedness against which the defendant is alleged to have released and indemnified the plaintiff is that of the plaintiff instead of the Capital Publishing Company.

The agreement which is made a part of both of said counts is as follows:

"Capital City Bank
(State Depository)

G. W. Saxon, President
J. A. Ball, Vice President      Branch at Apalachicola, Fla.
T. E. Perkins, Cashier
Jno. M. Bell Asst Cashier
Capital $50000.        Tallahassee, Fla., May 29, 1906.

We hereby indemnify and release Mr. I. B. Hilson, from the following obligations of the Capital Publishing Co. and himself personally.

| | |
|---|---:|
| Towers M'FG Co., about | 87.00 |
| S. P. Richards | 125.00 |
| H. & W. B. Drew Co., | 100.00 |
| Morning News | 70.00 |
| Schoemaker & Co., | 125.00 |
| Cutter Rice & Co., | 425.00 |
| Merganthaler Co., | 6500.00 |
| McDougall | 350.00 |
| Whitlock Prtg Co., | 675.00 |
| Antietam Paper Co., | 1500.00 |
| Electric Co., | 176.00 |

Capital City Bank,
G. W. Saxon, Prestd."

Three pleas were filed by the defendant as follows:

"1.   That it never was indebted as alleged.

2.   That is did not promise as alleged.

3.   That the indebtedness of $4500, alleged in said declaration to have been paid by the plaintiff to 'Merganthaler Company was not an obligation of the Capital Publishing Company and plaintiff personally from the payment of which the defendant agreed to indemnify and release the plaintiff.' "

The first of these pleas was stricken on motion. Issue was attempted to be joined on the second, and to the third a demurrer was interposed, which was sustained. Two other pleas were filed, one of which was stricken, and to the other a demurrer was sustained. Some other proceedings were had and then the plaintiff amended his declaration by adding two new counts, which are just like the two first counts, except that in neither is it alleged that the plaintiff has paid the $4500, but simply that the defendant has refused. to pay or release the plaintiff from the same. Pleas were interposed to these two counts, and demurrers to them were filed by the plaintiff. These demurrers were sustained. Besides the questions of law which arise out of these rulings, several interesting questions of practice are presented, and incidentally we remark that it would seem as if sections 1420 General Statutes of 1906, which seems to have been introduced into the statute law by the Revisers was not called to the attention of the court in dealing with a demurrer to a plea as valid sometime after an issue upon said plea had been created by said section. But the fundamental question is has the plaintiff stated a cause of action in either count of his declaration? Independent of the fact that a demurrer to pleas reaches back to the declaration, this court will take notice of a fatal defect in the latter. Hall v. Northern & Southern Co., 55 Fla. 242, 46 South. Rep. 178, and cases cited; Kirton v. Atlantic Coast Line R. Co., 57 Fla. 79, 49 South. Rep. 1024. Time and again this court has adhered to the rule laid down in Bennett v. Herring, 1 Fla. 387, that "the declaration must show plainly and certainly all circumstances material to the maintenance of the action, for if there be two intendments it shall be taken most strongly against the plaintiff." See cases cited in the concurring opinion of Mr. Justice SHACKLEFORD in Atlantic Coast Line R. Co. v. Benedict Pineapple Co., 52 Fla. 165,

text 174, 42 South. Rep. 529, and Kirton v. Atlantic Coast Line R. Co., *supra*.

Reverting to the several counts of the declaration it will be observed that each of them makes the agreement of the Capial City Bank a part of itself. It is the basis of the suit.

It follows from the foregoing rule of construction of declarations that in its construction that no intendments favorable to the plaintiff can be indulged in. It is also laid down as a rule in the construction of contracts that if the terms of a contract appear on their face to be inserted for the benefit of one of the parties, he will be considered as having inserted such terms and as having chosen the language thereof. Any ambiguity in such language is, therefore, to be construed more strongly against the party making use of such language. The rule is summarized in the maxim *"Fortius contra proferentem."* 2 Page on Contracts, Paragraph 1122. The agreement made a part of each count states the undertaking of the Capital City Bank in the following words: "We hereby indemnify and release Mr. I. B. Hilson from the following obligations of the Capital Publishing Co. and himself personally." The declaration counts on the copulative conjunction "and" used in the above quotation to connect the Capital Publishing Co. with the word "himself", as being used in the sense of the disjunctive conjunction "or", and as being an indemnity against the separate debts of the Capital Publishing Co. and I. B. Hilson. Now, there is no doubt that such a meaning may be given to the word "and" when the whole context of the instrument in which it is used indicates that such a meaning should be given it, or when the situation of the parties and the surrounding circumstances show that the parties to the agreement intended that it should be so used. Snow v. Pressey, 85 Me. 408, 27 Atl. Rep. 272; Hale v. Sweet, 40 N. Y. 97; but when such an intention is

not apparent from the context of the instrument, nor from the situation of the parties and the surrounding circumstances, the ordinary meaning of a word is prima facie. that employed. 2 Page on Contracts, Paragraphs 1105, 1123, 1125; Roome v. Phillips, 24 N. Y. 463.

In the case of Mayer v. Cook, 57 N. Y. Supp. 94, it was held that "Under a guaranty to pay 'all bills of goods bought by B and M' not to exceed a gross sum, the guarantor is not liable for sales to either party individually, but only for joint sales." The court says in its opinion: "It is manifest that an engagement to answer for the obligations of debtors collectively cannot be extended to their individual obligations." It is further said "while courts have construed 'and' as 'or' and vice versa such construction has been sanctioned only for strong reasons, and in order to carry out the manifest intention of the parties." See also Robinson v. Southern Pac. Co., 105 Cal. 526, text 541, 38 Pac. Rep. 94. In 2 Am. & Eng. Ency. of Law (2nd ed.) p. 333, title "And," it is said: "In order to effectuate the intention of the testator or legislature the word 'and' is sometimes construed to mean 'or' and vice versa. This construction, however, is not resorted to except for strong reasons. Indeed, to say that 'or' can ever mean 'and' seems to be an inaccurate expression. It should rather be said that for strong reasons and in conformity with a clear intention 'or' has been changed or removed and 'and' substituted in its place or vice versa." In the case of Morgan v. Thomas, L. R. 9, Q. B. Div. 643, cited in a note under the foregoing title, JESSEL, M. R. says: "You will find it said in some cases that 'or' means 'and;' but 'or' never does mean 'and' unless there is a context which shows it is used for 'and' by mistake. The instance I have given is this: Suppose a testator said 'I give the black cow on which I usually ride to A. B.,' and he usually rode on a black horse; of course the horse would

pass, but I do not think that any annotator of cases would put in the marginal note that 'cow' means 'horse.' You correct the wrong word used by the testator by the context; when you find it was an animal on which he daily rode you would say he meant a horse, he would not ride a cow in this country. It is not that the word has a different meaning from that which it usually bears, but the context shows the testator has by mistake used one word for another." See also Bettman v. Harness, 42 W. Va. 433, 26 S. E. Rep. 271; Douglass v. Eyre, 7 Fed. Cas. (No. 4032) 975.

In the case of Kirton v. Atlantic Coast Line R. Co., *supra,* this court has said: "A demurrer to pleas reaches back to the declaration, and if the declaration is defective in substance the judgment of the court sustaining such demurrer must be held to be correct regardless of the sufficiency of the pleas. A declaration in an action at law should allege distinctly and clearly every fact that is essential to the plaintiff's right of action. Where the allegations of a declaration containing only one count are repugnant to and inconsistent with each other such allegations neutralize each other and the declaration will be held bad on general demurrer provided such repugnancy and inconsistency relate to matters of substance and not of form only." It was also held by this court in the case of State v. Seaboard Air Line Railway, 56 Fla. 670, 47 South. Rep. 986, that "where allegations of a declaration containing only one count are repugnant to and inconsistent with each other such allegations neutralize each other and the declaration will be held bad on demurrer. A like result must necessarily follow if the allegations or statements contained in a cause of action which is made a part of the declaration by apt words, are repugnant to and inconsistent with the allegations in the declaration."

In the instant case as before stated in each and every

count the written agreement of the Capital City Bank is made a part thereof. Giving to the word "and" used in said agreement between "Capital Publishing Co." and "himself," its usual meaning as a copulative conjunction the agreement means that the Capital City Bank indemnified and released I. B. Hilson from certain obligations of the said company and himself which were the obligations of both. There is nothing in the context of the agreement which justifies any other meaning, and no circumstances connected with the making of the agreement are stated in the declaration which would justify any other meaning. Each count of the declaration is based on defendant's failure to pay or release the several obligations of the Publishing Company and Hilson. Each count, therefore, contains allegations which are repugnant to and inconsistent with each other. For if the defendant agreed to release and pay obligations which the Publishing Company owed and which Hilson also owed, it is not liable for their several obligations. We are constrained therefore to conclude that the declaration states no cause of action against the defendant and that a judgment based thereon is erroneous.

Judgment reversed.

All concur except TAYLOR, J., absent on account of illness.

CAPITAL CITY BANK, A CORPORATION, *Plaintiff in Error*, v. I. B. HILSON, *Defendant in Error*.

## ON REHEARING.

HOCKER, J.—A petition for rehearing has been filed in this case setting up that there is error in the original opinion in several particulars. First, that the court erred in confining itself to deciding that the word "and" used in the contract is "conjunctive", and not "disjunctive". "That is, that *prima facie* it means 'and' not 'or'."

Second, that the declaration alleges the $6,500 obligation is an obligation of the Capital Publishing Company and Hilson severally, and that the demurrer to the declaration admitted the declaration to be true, and thus admitted this several obligation.

The petition as a literary criticism is interesting and instructive, rich in classical citation and elegant in expression. It appears to us, however, that it is inexact in the statement that the defendant demurred to the declaration. We are unable to find in the record any such demurrer, and the opinion filed shows that it was the plaintiff's own demurrer to defendant's pleas which we felt constrained to visit on the declaration. As to the first contention, it is argued in the petition that "the question is not whether in this instrument "and" means "and" or "or" or—whether it is conjunctive or disjunctive—but what is the meaning and effect which would be given it as a conjunctive conjunction." This contention seems to us to be irreconcilable with that of the brief of the defendant in error which was before us when the opinion was filed. The argument of the brief is: "If the view be taken that the words 'of the Capital Publishing Company and himself personally' are excludingly descriptive of the kind of obligations, then we say that the construction of those words should be such as to substitute 'or' for the word 'and' so that it could read 'of the Capital Publishing Company or himself personally. It frequently happens that the word "and" means "or", and will be so construed by the court in order to carry out the intention of the parties." So we see that we are invited by the brief of the defendant in error to construe the word "and" as meaning "or," and in the petition we are assured that is not the question at all. It was because of this contention in the brief that we entered into an examination of the meaning of the word "and" as afforded in the decisions

referred to in the opinion. Considering then the word "and" as a copulative conjunction the question is what meaning is to be given to it in the agreement sued on? Does it in connection with all the words of the sentence in which it is used import as between Hilson and the Capital Publishing Company joint obligations, joint and several obligations, or several obligations? Prima facie, in the absence of statute the liability of two or more persons on the same contract is a joint liability. 2 Page on Contracts, Paragraph 1132. As to the classical use of the word "and" everyone knows that it is constantly used to group under one general concept things which in themselves are several and distinct. The instances of such use are too numerous to need citation. Everyone also knows that the word is used to couple together words and phrases used as jointly describing or qualifying in the adjective sense some other word or phrase. In the instant case the subject of the contract is "obligation." The matter predicated of them is that they are the obligations of "the Capital Publishing Company and himself (Hilson) personally." It is therefore predicated of them, at least *prima facie,* that they are each the obligations of these two parties. It is also contended that the sentence in the agreement in which the word "and" occurs is a syncopated sentence such as is in daily use to indicate a several obligation, that the expanded form would be "the obligations of the Capital Publishing Company, and the obligations of himself personally," and this expanded form clearly shows a several obligation. To us this expansion of the sentence does not clear up the ambiguity. For of what use in this sentence is the adverb "personally". Adverbs only qualify verbs, adjectives or other adverbs. They do not qualify nouns. To make this adverb of any use in this sentence, the sentence will have to be further expanded by supplying some word which might be sug-

gested by the context. It seems to us that if the sentence is to be expanded it should read as follows, the words we supply being in brackets: "the following obligations of the Capital Publishing Company and himself (for which he is) personally (liable)", for his personal liability was evidently in Mr. Hilson's mind when the contract was made as shown by the fact that it was made for his benefit alone. Thus expanded, it seems to us, that it imports a joint obligation. If we examine the contract we see that while the names of the persons and firms to whom the alleged obligations are due, the amounts seem to be stated as "*about*" such and such figures. The exact amount of the debts is not stated. Therefore taken together with what precedes them it is hardly legitimate to argue that the several amounts of these obligations and the names of the parties to whom they are said to be due are conclusively descriptive of the obligations against which the plaintiff in error gave the indemnity contract.

Again, the agreement reads: "We hereby indemnify and release I. B. Hilson from the following obligations of the Capital Publishing Company and himself personally." As it is Mr. Hilson alone who is protected by the indemnity, and not the Capital Publishing Company, it would seem natural that the contract was worded as it is, in order that he might be protected against obligations of the Capital Publishing Company for which he was jointly liable with that company; for in the case as stated in the declaration, we can discover no reason why he should be protected against the several obligations of the company, for which he was not liable. If the agreement does not embrace the several obligations of the Capital Publishing Company, we do not see why the same agreement should embrace the several obligations of Mr. Hilson. We have given the petition careful consideration, and

are unable to see that the facts and arguments presented free the contract sued on from ambiguity.

The petition is denied.

All concur.

PARKHILL, J., concurring.

I can readily see how this contract means that the Bank will and does indemnify and release Mr. I. B. Hilson from the obligations of the Capital Publishing Company and the obligations of himself personally as set forth in the list of obligations that follows,—that the sentence under construction may be a syncopated one, the word "obligations" being understood to follow the word "and" in the quoted sentence of the contract, thus showing a several obligation.

I can see too, how the contract is subject to the construction put upon it in the opinion prepared by Mr. Justice HOCKER. This being so, the sentence is capable of two constructions and must, under the rules of law, be construed most strongly against the one claiming under the contract.

It may be, from a reading of this declaration, the whole of the transaction between these parties is not before us. Perhaps, the matter may be so stated as to make it clear that the Bank intended to assume the several liability of Hilson independent of any connection of the Publishing Company.