THE CITY OF TALLAHASSEE, A MUNICIPAL CORPORATION, *Plaintiff in Error,* v. THOMAS J. HAWES, *Defendant in Error.*

Opinion Filed February 8, 1921.

Petition for ·Rehearing Denied March 25, 1921.

Where a declaration alleges that, as a result of the city's negligence, a pedestrian was injured by the falling of an awning over a city sidewalk, when. a defectively secured support post was jerked from under the awning by a horse hitched thereto, and the evidence shows without objection that "hitching horses to posts on that street was a pretty common practice," and that the defective condition of the post supporting the awning was apparent and had been so for some weeks, and the same post had a short time before been jerked from its proper place by a horse hitched thereto, a verdict and judgment for the plaintiff are not erroneous as matter of law.

A Writ of Error to the Circuit Court for Leon County; E. C. Love, Judge.

Judgment affirmed.

*Myers & Myers,* for Plaintiff in Error;

*W. J. Oven,* for Defendant in Error.

WHITFIELD, J.—The declaration herein alleges that the city did "wrongfully and negligently suffer and permit a certain sidewalk on" a named street in the city "to become and remain in such an unsafe, insecure and defective condition and dangerous to pedestrians passing along and over said sidewalk" * * * that plain-

tiff while walking along said sidewalk in front of a stated building "under the awning projecting therefrom and over said sidewalk, a horse, which was tied to the posts or supports supporting the outer edge of said awning and running from the said awning down to and resting upon the surface of said sidewalk, became frightened and lunged or jerked at the lines with 'which said horse was so tied to said post, and by such lunge or jerk pulled from under the said awning the post or support to which said horse was fastened, whereupon, and without any knowledge or warning to the plaintiff, or without any knowledge on his part previous thereto of the defective and dangerous condition of said sidewalk to pedestrians passing thereover, the said awning by reason of its unsafe, insecure and defective condition in not having the post supporting it mortised into or fastened to the sidewalk, and in not being securely and properly fastened to the said building, instantly fell upon the plaintiff," injuring him. A demurrer to the declaration was overruled and at the trial on a plea of not guilty, verdict and judgment for the plaintiff in $1,000.00 damages were rendered, and the defendant took writ of error.

In considering this unusual case, the court is assisted by able briefs and oral arguments by counsel for the parties.

The defendant's duty was to take due care that the awning and the posts supporting it were so constructed and maintained, that in their ordinary, usual or customary uses they would not injure pedestrians properly passing along the sidewalk. The defendant's liability in damages covers injuries caused in the ordinary, usual or customary use of the posts supporting the awnings, where such injuries reasonably may have been contemplated as

a proximate result of negligence in the erection and maintenance of the awning and posts on or over the sidewalk, whether such result was actually contemplated or not. See City of Tallahassee v. Fortune, 3 Fla. 19, 52 Am. Dec. 358; 13 R. C. L. p. 311; City of Jacksonville v. Drew, 19 Fla. 106; City of Pensacola v. Jones, 58 Fla. 208, 50 South. Rep. 874; Key West v. Baldwin, 69 Fla. 136, 67 South. Rep. 808.

In Janes v. City of Tampa, 52 Fla. 292, 42 South. Rep. 729, the city negligently permitted lumber, etc., to occupy a large part of a street that was being used for horse vehicle traffic, and a team, without fault or negligence on the part of the driver. becoming frightened, was injured by running into the lumber, etc., in the street. Such an injury being a consequence that, from the ordinary use of the street, should have been contemplated by the city in negligently permitting the dangerous obstruction to occupy an undue portion of the street then being used for usual street purposes, it was held that a cause of action against the city was alleged.

In Hembling v. City of Grand Rapids, 99 Mich. 292, 58 N. W. Rep. 310, a horse hitched to a plank in a wood sidewalk jerked the plank out and a passing pedestrian stepped in the hole and was injured. In that case it did not appear that hitching a horse to planks in the sidewalk in that city was an ordinary, usual or customary use of the planks so as to make it the duty of the city to take care that the planks in the sidewalk could not readily be jerked out of place by a horse hitched thereto as pedestrians are passing by. The city was held to be not liable for the injury to the pedestrian.

In this case the declaration alleges that a horse was tied to a post supporting an awning over the sidewalk,

and that as plaintiff passed along the sidewalk, the horse pulled the post from under the awning, whereupon "the said awning by reason of its unsafe, insecure and defective condition in not having the post supporting it mortised into or fastened to the sidewalk, and in not being securely and properly fastened to the said building, instantly fell upon the plaintiff."

Under these allegations the plaintiff could prove an injury proximately resulting from an accident in the ordinary, usual or customary use of the post supporting the awning. It is not alleged that it was customary in the city to hitch a horse to posts supporting awnings over sidewalks, but no ground of the demurrer to the declaration goes specifically to this point. And even if the declaration was technically defective in this particular, and the demurrer was good, the error, if any, was, under the provisions of Chapter 6223, Acts of 1911, rendered immaterial when it was without objection shown by testimony that "hitching horses to posts on that street was pretty common practice," and that the post had been "not safe" for a month or two and that officers of the city passed there from time to time, to whom the condition of the post would have been apparent if they had examined it. The bottom of the post had been pulled out of its proper place by a horse a short time before, but the post still supported the awning.

The defendant could not have been misled by the failure to allege that it was customary to hitch horses to posts supporting awnings over sidewalks in the city, and as the plaintiff proved a liability without objection under allegations that do not wholly fail to state a cause of action, the error, if any, in overruling the demurrer to the declaration was not material after verdict. Chap.

6223, Acts 1911; Tampa & J. R. Co. v. Crawford, 67 Fla. 77, 64 South. Rep. 437; Standard Phosphate Co. v. Lunn, 66 Fla. 220, 63 South. Rep. 429; DeFuniak Springs v. Perdue, 69 Fla. 326, 68 South. Rep. 234; Gonzalez v. City of Pensacola, 65 Fla. 241, 61 South. Rep. 503; National Surety Co. v. Williams, 74 Fla. 446, 77 South. Rep. 212.

The awning was supported by two posts. The post pulled out by the horse was not fastened to the sidewalk, but merely rested on the outer edge of the sidewalk.

It being "pretty common practice" to hitch horses to awning posts on that street, it reasonably should have been contemplated that an insecure post supporting a wood and galvanized iron awning over the sidewalk might be pulled out by a horse hitched thereto, thus precipitating the heavy awning upon any pedestrian passing by on the sidewalk. Particularly should such a happening have been contemplated when the post had theretofore been pulled out of its place by a horse hitched to it, and the post being the main support of the awning had remained in a noticeably unsafe condition for some days.

In view of the uncontested testimony as to the "common practice" of hitching horses to posts supporting awnings over the sidewalks on that street, and of the condition of the post before and at the time of the injury, technical errors, if any, in giving or refusing charges, were not harmful.

A ground of liability appearing in the testimony that was adduced under the allegations as to the negligence of the defendant, the verdict and judgment do not appear to be contrary to law.

The holding here does not conflict with, but is in ac-

cord with the following rule formulated by counsel for the plaintiff in error:

"Where two causes combine to produce an injury, both in their nature proximate, the one being a defect in a city street, and the other some accident for which neither party was responsible, and which the city was under no obligation to foresee and guard against, the city is not liable, even though the plaintiff was not at fault, and the injury would not have been sustained but for the defect in the street."

In this case the customary hitching of horses to posts supporting awnings over sidewalks in the city put upon the city an "obligation to foresee and guard against" injuries to pedestrians caused by the jerking of the posts from their places by horses hitched thereto. This could readily be done by securing the posts in position or by securely attaching the awnings to the buildings without posts.

Judgment affirmed.

BROWNE, C. J., AND WEST, J., concur.

TAYLOR AND ELLIS, J. J., dissent.

ELLIS, J., dissenting.

This action grows out of an injury to the defendant in error, resulting from the falling upon him of an awning, erected over a sidewalk along which the defendant in error was walking. The principle upon which it is contended that the city is liable is, that it was the city's duty to use proper care to guard the sidewalk from dangers

which existed by the city's consent; that the omission to use such care by the city constitutes negligence upon its part, for which it must respond in damages for an injury to any one caused proximately by such negligence.

The declaration is in three counts. The first two allege that the city negligently permitted a certain frame awning projecting over the sidewalk at a certain point on a certain street to become and remain in an unsafe and defective condition and dangerous to pedestrians passing along the sidewalk; that the awning was without sufficient supports, fastenings and stays to prevent its falling upon pedestrians. These two counts allege that the plaintiff below was walking along the sidewalk, and while under the awning a horse which was tied to one of the posts of the awning which supported its outer edge, became frightened and jerked the lines with which it was tied and pulled the post from under the awning which fell upon the plaintiff and injured him.

The third count alleges that the city negligently permitted the sidewalk on a certain street at a certain place to become and remain in an unsafe and defective condition and dangerous to pedestrians passing along the sidewalk, and that while the plaintiff was walking along the sidewalk and under the awning, the horse which was tied to the post supporting the outer edge of the awning became frightened and jerked the post from under the awning, which fell upon the plaintiff and injured him. This count alleged that the awning post to which the horse was tied was not "fastened or mortised" in the sidewalk.

It then affirmatively appears from the declaration that the proximate cause of the injury was the force exerted by the frightened horse in jerking away the support of the awning and causing it to fall. The city's

5—Vol. 81

liability therefore for an injury to a pedestrian caused in that manner would depend upon the city's duty to use such care as is reasonably necessary to avoid such danger to pedestrians, and that duty would depend upon the city's consent or acquiesence in the use of those particular awning posts, or awning posts generally in the city for tieing horses or other such animals to them. The majority opinion concedes so much. It states that the "defendant's liability in damages covers injuries caused in the ordinary, usual or customary use of the posts supporting the awning."

It is not alleged that the awning was an obstruction and interfered with the ordinary use of the street, therefore the case of Janes v. City of Tampa, 52 Fla. 292, 42 South. Rep. 729, has no application. Nor is it alleged that hitching a horse to the awning posts in the city was an ordinary, usual or customary use of the awning posts, therefore the case of Hembling v. City of Grand Rapids, 99 Mich. 292, 58 N. W. Rep. 310, does apply and is authority for the position that in the absence of such customary use of awning posts in this city it would not be liable for an injury to a pedestrian caused in the manner alleged in the declaration.

But if hitching horses to awning posts in Tallahassee is a usual and customary use of such posts and the city is deemed to have consented or acquiesced in such custom, it is a necessary element in the plaintiff's right to recovery and a failure to allege such custom in the declaration renders it fatally defective as stating a cause of action. Because a declaration in an action at law should by direct allegations or by fair inference from direct allegations contain all essentials of a cause of action. See German-American Lumber Co. v. Brock, 55 Fla. 577, 46

South. Rep. 740; Leynes v. Tampa Foundry & Mach. Co., 56 Fla. 488, 47 South. Rep. 918; Woodbury v. Tampa Water Works Co., 57 Fla. 249, 49 South. Rep. 556; Sylvester v. Lichtenstein, 61 Fla. 441, 55 South. Rep. 282; Williams v. Pringle, 61 Fla. 485, 54 South. Rep. 452.

The rule that where a declaration fails to allege substantive facts that are essential to a right of action the trial court or appellate court may take notice of such fatal defect and make proper disposition of the cause has been announced by this court. See Hall v. Northern & Southern Co., 55 Fla. 242, 46 South. Rep. 178; Sylvester v. Lichtenstein, *supra;* Capital City Bank v. Hilson, 59 Fla. 215, 51 South. Rep. 853; Kirton v. Atlantic Coast Line R. Co., 57 Fla. 79, 49 South. Rep. 1024.

These rules of pleading are elementary. Merely to state them is to prove their validity. They rest upon the doctrine that the defendant in every action should be apprised with sufficient definiteness and clearness of the charge which seeks to fasten a liability upon him to the end that he may be enabled to prepare a proper defense. Not to do that is to take him by surprise, to put him at a disadvantage, to handicap him in a court of justice, to deny him equal protection, to impose upon him, oppress him, tyranize over him and defraud him.

According to the declaration the negligent act or omission of the city consisted in its failure to cause awnings to be erected of such materials and with such substantialness as to resist the force that might be exerted upon them by frightened horses that may be tied to them by ropes or lines sufficient to resist the struggles of the horses. The omission of the city to make provision against such dangers could not constitute negligence unless the city consented to or acquiesced in the custom of

tieing horses to awning posts, which custom if it existed certainly would add an element of danger entirely foreign to that which may reasonably be said to exist to pedestrians from the erection of awnings over sidewalks in cities. Awnings over sidewalks are not erected in cities to serve as "horse racks" or hitching posts. Such purpose is foreign, non-essential, accidental to that which an awning is intended to serve.

It is simply unreasonable to say that when an awning is erected over a sidewalk in a city it becomes the city's duty to cause it to be constructed of such materials or in such manner as to resist any force that may be exerted upon it by a pair of mules or a horse which may be tied to it by ropes and which may become frightened and try to break away. It is irrational to suppose that such a sequence of events might follow upon the erection of an awning over a sidewalk to protect pedestrians and the building front and from the sun's rays and rains, unless a custom existed in the community of hitching horses to the awning posts. If that custom existed the city's duty would be apparent. If it did not exist there would be no duty upon the city's part to take any reasonable precaution to avoid such danger.

The declaration did not allege such custom. It was therefore deficient in an essential allegation of fact. A fact necessary to the defendant's liability, an essential element to a cause of action resulting from injury occurring as the declaration alleged.

A recovery can be had only upon the case made by the declaration; the allegata and probata must correspond. If no case is made by the declaration, there can be no recovery upon the case made by the proof, however perfect the latter may be. See Coons v. Pritchard, 69 Fla.

362, 68 South. Rep. 225; Ingram-Dekle Lumber Co. v. Geiger, 71 Fla. 390, 71 South. Rep. 552; Louisville & N. R. Co. v. Guyton, 47 Fla. 188, 36 South. Rep. 84.

But the majority opinion holds that under Chapter 6223, Acts of 1911, the "technical defect" was cured by verdict. It was not the purpose of that Act to sacrifice justice to dispatch, nor to deprive a party litigant of the right to be advised of the charge against him.

It is said that the city could not have been misled by the failure to allege that it was customary to hitch horses to posts supporting awnings over sidewalks in the city. The point is, that the failure to allege that fact and that the custom was acquiesced in by the city was necessary to the statement of a cause of action. The failure to make that allegation was not a mere technical defect in form to be cured by a verdict, but it was a defect in substance rendering the declaration bad in that it stated no cause of action.

I therefore think that the demurrer should have been sustained.

TAYLOR, J., concurs.

On Petition for Rehearing.

PER CURIAM. The ground of liability is that the city permitted the defectively supported awning to remain over the sidewalk so that it was likely to fall and injure pedestrians, upon any considerable lateral force being applied to the defective support in the use to which the walk and the awning support were ordinarily or customarily put, of which use the city is held to know; and the

precipitation of the awning upon the plaintiff while walking on the sidewalk caused by the jerk of the horse hitched to the insecure support of the awning without fault of the plaintiff gave rise to the liability of the city, when it was shown to be customary to hitch horses to the supports of awnings on that street, particularly when it appears that the support had been in the unsafe condition for some time and that the same support had some time before been jerked from its proper place by a horse hitched thereto and that thereafter such support remained in the unsafe condition, which was apparent to any one who might examine it for some weeks and until this injury occurred.

The duty of the city involved the maintenance of the sidewalk in a reasonably safe condition for a "viatic use of the way." This included the reasonably safe condition of the awning overhead as well as of the walk itself.

The declaration does not allege that it was customary to hitch horses to awning supports on that street, but no ground of the demurrer specifically goes to this defect and the statute provides that "no judgment shall be set aside or reversed, or new trial granted * for error as to any matter of pleading or procedure, unless in the opinion of the court * after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice."

One witness, without objection, testified: "They had just torn away the old sidewalk, just before then, I don't know just how long, but just a little while before then, and laid a new one, and these posts were just sitting on the new sidewalk, one at each corner of this awning. They weren't fastened into the walk at all, and this awning where it butted against the house wasn't bolted to the house, it was simply nailed up there with some spikes

to a brick wall, and when this piece was pulled out, it pulled it all right loose from the building, and it fell down and caught us both under it. There was one post at each corner. I went by there the next morning to see how many there was and there was two. And when one post came out, the whole thing came down. There were no supports or fastenings other than the two posts to hold it up—that was all that could have been holding it. The awning needed repair. It wasn't in shape to be there at all—I couldn't say how long it had been that way. It had been that way for several weeks that I know of. I suppose the new sidewalk had been there for five or six weeks, may be longer than that. The posts were not morticed into the sidewalk—they were just setting on the sidewalk. There were only two posts." "In my judgment, this awning was not securely fastened to the building. It should have been tied, bolted, as we call it, to the wall. If those tie bolts had been there the shed would not have fallen when the post was pulled out. You could have pulled both of them out and it wouldn't have fallen." "It is customary where sheds are supported by posts to mortice or fasten them into the sidewalk. Those posts were not morticed or fastened."

Another witness without objection testified: "I had noticed the condition of this awning before the accident. We had had a little trouble with horses pulling it out once before. It was not fastened to the walk at all. After that any heavy pressure against the post would shove it out. When the horse pulled it out before, the shed didn't fall. He didn't pull it plumb out. The horse was hitched to it, and when he backed he pulled it to the sidewalk. He didn't take it clear out. Hitching horses to posts on that street was a pretty common practice. I had noticed

the condition of the shed before the accident on account of being by there—it was right near us. I shouldn't say its condition was very good, not safe, when it would move that way. I couldn't say how long it had been in that condition, but for a pretty good while. I should say a month or two. It was on a street that the city officers passed from time to time. I don't know that its condition was ever called to the attention of any city officer. I never spoke to any city official about it myself. They never made any examination of it that I know of. It would have been apparent to them had they examined it. It was plain. You could see it in passing by." "It was some time before the accident that Mr. Carpenter called my attention to the condition of this awning or shed being dangerous. I was speaking about the whole of that street. I couldn't say how long before. It was some time before and after the shed was tripped the first time. Its condition was plainly apparent to passers by. The posts were not fastened in the sidewalk."

It is obvious from this and other testimony that the awning support had been unsafe for some time and that its unsafe condition was such that the city reasonably should have known of it. Evidence that "hitching horses to posts on that street was a pretty common practice" was not objected to or controverted. If it was common practice it should have been known to the city as a customary use of the awning post supports, and this condition had immediate relation to the continued and obvious unsafe condition of the particular awning post support on that street which had been pulled out of place on a previous occasion by a horse hitched thereto.

If the defendant was taken by surprise in the introduction of evidence not within the allegations of the declara-

tion and it had been adduced over appropriate objections, the defendant might have been able to show injury in being misled and jeopardized because not prepared to meet the evidence.

If the allegation as to the customary use of the awning supports in hitching horses thereto would have shown a cause of action, an error in omitting such an allegation is under the statute not reversible error when the evidence, without objection being made thereto, proves the custom and proves the long continued unsafe condition of the awning support under circumstances that the city reasonably should have known of the customary use of the supports by hitching horses thereto and should reasonably have known of the patently unsafe condition of the supports, which had no fastenings at the bottom, but merely rested on the surface of the sidewalk next to the street.

It being the duty of the city to exercise reasoanble care in having the awning support kept in a safe condition for the support of the awning, which in this case involved its safe condition for the common practice of hitching horses thereto, and the evidence showing a failure to perform the duty, it was not error to refuse an abstract instruction that "there is no duty resting on a city to see that such sheds and awnings are sufficiently strong or secure to resist the force to which they might be subjected by a horse hitched to one of the posts sustaining the same in an effort to break from his fastening." Every one, including city officials, must know that horses sometimes become frightened and try to break away from their fastening; and it being common practice to hitch horses to awning posts on that street, which is an element of the defendant's liability, the circumstances of the jerking by the

horse in this case are not shown to have been other than those that should ordinarily be anticipated under conditions not shown to be at all unusual.

The city should have known of the customary use of awning posts on that street for hitching horses thereto, and the method of preventing a continuance of the custom, whether by ordinance or otherwise, does not affect the liability that may grow out of permitting the practice.

Rehearing denied.