NATIONAL SURETY COMPANY, A CORPORATION ORGANIZED AND EXISTING UNDER AND BY VIRTUE OF THE LAWS OF THE STATE OF NEW YORK, AND ALONZO D. WILDER, *Plaintiffs in Error,* v. ALEXANDER H. WILLIAMS, AS RECEIVER OF THE SOPCHOPPY STATE BANK, A CORPORATION CREATED AND ORGANIZED UNDER AND BY VIRTUE OF THE LAWS OF THE STATE OF FLORIDA.

Defendant in Error.

Opinion Filed December 8, 1917.

1. An exhibit may by apt words be made a part of a declaration *ex contractu* or *ex delicto,* and where both parties, as well as the court below, have treated such an exhibit as a part of the declaration which may be reached by demurrer, this court will follow the example of the parties and the trial court and likewise so regard it when the case comes here on writ of error.

2. When properly tested by demurrer or other appropriate procedure, ambiguities in a pleading should be construed against the party in whose interest the ambiguous language is used; yet a court may not be held in error for overruling a demurrer to an ambiguous pleading when such pleading does not put the opposite party to a disadvantage, and when under the allegations or averments of the pleading, a cause of action or a defense may fairly be shown by proper evidence.

3. Stockholders of a corporation may by appropriate action ratify by-laws adopted by the promoters of such corporation before letters patent were issued and delivered to it.

4. Prior to the adoption of Chapter 6465, Acts of 1913, Laws of Florida, provisions and stipulations contained in valid contracts limiting the time within which suits could be brought upon such contracts were valid and enforcible.

5. A bond made by a surety company agreeing to reimburse an employer for any pecuniary loss sustained "by any act of fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds" committed by a designated employee is in effect a contract of insurance to which the rules of construction governing ordinary contracts of insurance are applicable.

6. The rule for the construction and interpretation of insurance contracts is, that the policy must be liberally construed in favor of the insured so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure.

7. A bond made by a surety company agreeing to indemnify a bank against pecuniary loss on account of any fraud or dishonesty of its cashier, if susceptible of two constructions, one favorable to the bank and the other favorable to the surety company will be given the former construction when such bond was drawn by the attorneys or representatives of the surety company.

8. The bond of a surety company agreeing to indemnify an employer against the default of an employee is to be most strongly construed against the surety.

9. The bond in this case provided that upon "becoming aware of any act which may be made the basis of a claim" under such bond "the employer shall give immediate notice thereof to the surety at its home office" by telegraph and by registered letter, and within ninety days after the date of such *notice* shall file with the surety an "itemized *claim*" under said bond. It further provided that no action to recover from the surety any claim under said bond should be brought "unless commenced within a period of twelve months after the date the employer shall have given *notice of claim.*"

HELD. Applying the foregoing rule of construction, that suit may be maintained in such a case when commenced within a period of twelve months after the date upon which

the employer has filed with the surety his "itemized claim," and that such action is not barred because not commenced within a period of twelve months after the date upon which the employer gave notice that he had become aware "of any act which may be made the basis of a claim" under such bond.

10. A misappropriation of funds does not necessarily mean a misappropriation of actual cash, because "funds" is a much more comprehensive term and may include other assets or property.

11. When a cashier of a bank puts his note, which is of no value in such bank and issues a certificate of deposit of the bank in a like amount to another in payment to him of the purchase price of property which the cashier is purchasing for himself, the transaction is in legal effect the same as if such cashier had taken the money of the bank and used it in the purchase of such property.

12. Where it is proven that cashier of a bank has "loaned" to himself, without authority, excessive amounts of the bank's funds, without taking security therefor, and that his bills receivable are considerably less in their aggregate amount than his bills receivable account carried on the books of the bank, it cannot be said that it has not been proven that he has misappropriated the funds of the bank, and the fact that he placed his worthless notes in the bank for the amount of the funds used or taken by him, does not affect the substance of the transaction, nor change its real character.

13. In order that liability may attach on a bond conditioned to insure an employer against "fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds" by an employer it is not necessary for the employer to introduce such evidence as would be necessary to convict the employee of the crime of larceny or embezzlement as defined by the laws of this State.

14. Where separate amounts are erroneously included in a judgment a remittitur of the amounts so erroneously included may be permitted in lieu of a new trial

Writ of error to Circuit Court of Wakulla County, E. C. Love, Judge.

Judgment affirmed if remittitur be entered; if not, reversed.

### STATEMENT.

This action was brought by the defendant in error against the plaintiff in error on a bond given by Alonzo D. Wilder, as principal, to the Sopchoppy State Bank, upon which the National Surety Company, as surety, agreed to reimburse said bank within three months after proof of loss, for any pecuniary loss sustained by it because of the fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds of the said Wilder while in the employ of said bank, during the term commencing on the first day of April, 1912, at 12 o'clock noon and ending on the first day of April, 1913, at 12 o'clock noon.

The declaration consists of several common counts in assumpsit, and a special count upon the bond. The special count with exhibit B attached thereto and by reference made a part thereof, omitting form al parts, is as follows:

"Alexander H. Williams, as Receiver of the Sopchoppy State Bank, a corporation organized and existing under the laws of the State of Florida, and heretofore doing a general banking business in the town of Sopchoppy in the County of Wakulla in the State of Florida, plaintiff, by authority of the court first had and obtained, sues

National Surety Company, a corporation organized and existing under the laws of the State of New York, with its principal office or place of business in the State, County and City of New York, and Alonzo D. Wilder, the defendants, for that:

"First.    Whereas on the 12th day of April, ,A. D. 1912, the said defendant, National Surety Company, being then and there licensed by the State of Florida, to be and become surety on surety bonds of the class and character hereinafter mentioned in the State of Florida, did for the consideration of the sum of $25.00 to it in .hand paid on the said 12th day of April, A. D. 1912, make and deliver its certain bond, or writing obligatory under seal (a copy of which is hereto attached marked exhibit 'A' and prayed to be taken as part hereof by reference) in the sum of $10,000.00 lawful money to be paid to the Sopchoppy State Bank to which writing obligatory under seal or bond of the said defendant Alonzo D. Wilder was a party and that upon the strength, faith and credit of said bond or writing obligatory, under seal, and the covenants and provisions therein contained, the said Alonzo D. Wilder was taken and kept for the time hereinafter mentioned in the employ of said Sopchoppy State Bank.    That in and by said bond, or writing obligatory, under seal, the said defendant, National Surety Company, did agree to reimburse the said Sopchoppy State Bank as the employer therein named within three months after satisfactory proof of loss for any pecuniary loss sustained by the said Sopchoppy State Bank as such employer by any act of fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds committed by the said Alonzo D. Wilder, designated in the said bond, or writing obligatory, under seal, as the employee while the

said employee was in any position in the service of the said Sopchoppy State Bank during the term commencing on the first day of April, A. D. 1912, at twelve o'clock noon and ending on the first day of April, A. D. 1913, at twelve o'clock noon.    It being provided in said bond, or writing obligatory, under seal, that the following conditions should be precedent to any recovery thereunder:

"1st.    That the employer has no knowledge that the employee has been in arrears or in default in any position whatever; that if the employer or any officer becomes aware of the employee gambling, speculating, or committing any disreputable, lewd or unlawful act, the Surety shall be immediately notified thereof in writing at its Home Office, and that no act giving rise to a claim thereunder shall be condoned, nor any loss settled without the written consent of the Surety first being obtained.

"2nd.    Upon becoming aware of any act which may be made the basis of a claim hereunder the employer shall give immediate notice thereof to the Surety at its Home Office by telegraph at Surety's expense and by a registered letter, and within ninety (90) days after the date of said notice, file with the Surety an itemized claim hereunder duly sworn to, and upon request produce for investigation all books, vouchers and evidence which the Surety may require, and lend every assistance to bring the employee to justice.

"3rd.    Should the employer and Surety disagree regarding the amount of loss sustained hereunder for which the Surety may be liable, the matter may be arbitrated at the election of the employer through arbitrators consisting of one person appointed by the employer, and one person appointed by the Surety.    These two shall select a third person and the decision of the majority of

said persons shall be binding and conclusive. The expense of such arbitration to be equally divided.

"4th. In the event of loss being sustained, the Surety shall be entitled to share with the employer, pro rata, on the basis which the Surety's loss bears to the employer's total loss, in any recovery by the employer upon or by reason of such loss from every source other than from the Surety, and excepting any recovery upon or from other suretyship from such employee; and, likewise, in the event of loss by the employer, within the terms and provisions of this obligation, and, in excess of the amount thereof, the employer shall be entitled to share with the surety pro rata on the basis which the employer's loss (if in excess of the actual loss for which the Surety is liable hereunder) bears to the employer's total loss (i e. after expenses are deducted) by the Surety from, upon, or by reason of its payment of such loss.

"5th. That any settlement of any claim made hereunder shall operate as a complete discharge of the Surety under this bond.

"6th. That the Surety's liability hereunder shall cease immediately as to subsequent acts of the employee from and after (a) the first day of April, 1913; (b) discovery by the employer or any of its officers of any default hereunder on the part of the employee; (c) the employee leaving for any reason the service of the employer; (d) fifteen (15) days after written notice mailed to the employer by the Surety of its desire to withdraw as Surety, and any claim of the employer against the Surety must be duly presented to the Surety not later than six months after such termination of the Surety's liability.

"7th. This bond may be continued from year to year by the payment of an agreed premium to the Surety and the

issuance of its continuation certificate, and provided that the liability of the Surety shall not exceed the amount above written, whether the loss shall occur wholly during the term above named or during any continuation thereof, or partly during said term, or partly during any continuation thereof, and in case of any such continuation the Surety's liability on behalf of the employee shall be as continuous as if this bond had been originally written for a term including the period of such renewal.

"8th. No action or proceeding at law, or in equity shall be brought to recover from the Surety any claim under this bond, unless commenced within a period of twelve months after the date the employer shall have given notice of claim.

"9th. This bond is invalid unless it be signed by the employee, and the premium charged actually be paid to the Surety before the employer or any officer shall have knowledge of any probable or actual default thereunder.

"That after the execution and delivery of the said bond, or writing obligatory, under seal, by the said defendants to the said Sopchoppy State Bank, the said defendant Alonzo D. Wilder entered upon his duties as an employee of said bank and thereafter, to-wit: After the 12th day of April, A. D. 1912, at twelve o'clock noon, the said defendant, Alonzo D. Wilder, continuously remained in the employ of said Sopchoppy State Bank until the 29th day of July, A. D. 1912, and that between the said 12th day of April, A. D. 1912, at twelve o'clock noon and the said 29th day of July, A. D. 1912, the said defendant, Alonzo D. Wilder, while in the employ of the said Sopchoppy State Bank, at its banking house, or office, in the said town of Sopchoppy in Wakulla County, Florida, and while the said bonds, or writing obligatory.

under seal, was in full force and effect, and none of the conditions precedent to recovery had been in any way violated, ignored, or evaded, was guilty of fraud and dishonesty, including larceny or embezzlement and disappropriation of funds, as is more particularly shown by the itemized statement of the loss of said Sopchoppy State Bank furnished as the proof of such loss to the said defendant, National Surety Company, under and in accordance with the terms of said bond, or writing obligatory, under seal, and within the time therein and thereby required (a copy of which proof of loss, and itemized statement of the loss of said Sopchoppy State Bank in the manner and by the means so sustained as aforesaid, being hereto attached, marked exhibit 'B' and prayed to be taken as part hereof by reference.) That the said property and funds so taken, embezzled or misappropriated by the said defendant, Alonzo D. Wilder, within the time hereinbefore stated, to-wit: Between the 1st day of April, 1912, at twelve o'clock noon, and the 29th day of July, A. D. 1912, was the property of the said Sopchoppy State Bank by means whereof the said defendant, National Surety Company, became, was and is liable to pay to the said Sopchoppy State Bank and is indebted to the said Sopchoppy State Bank for the full sum of its said bond, namely, $10,000.00, and the said defendant, Alonzo D. Wilder, by reason of his wrongful acts in the premises set forth, became, was and is liable to pay the said Sopchoppy State Bank, and is indebted to the said Sopchoppy State Bank for the full sum lost by the said bank by reason of his said wrongful acts. That it became known to the said Sopchoppy State Bank on the 29th day of July, A. D. 1912, that the said defendant, Alonzo D. Wilder, as the employee of said bank, had been

guilty of fraud, dishonesty, including larceny, or embezzlement, and the misappropriation of funds, while the said defendant, Alonzo D. Wilder had, during the time aforementioned, been in the service of the said Sopchoppy State Bank as its employee.    That the said Sopchoppy State Bank had had no knowledge prior to the said 29th day of July, A. D. 1912, that its said employee, the said defendant, Alonzo D. Wilder, had been in arrears, or in default in any way whatever; nor had the said Sopchoppy State Bank or any of its officers had any knowledge that its said employee, the said defendant, Alonzo D. Wilder, had been in arreasr, or in default in any way whatever, prior to said date, nor had the said Sopchoppy State Bank or any of its officers had any knowledge prior to the said 29th day of July, A. D. 1912, that the said defendant, Alonzo D. Wilder, its said employee, was gambling, speculating, or committing any disreputable, lewd, or any unlawful act; nor had the said Sopchoppy State Bank in any way condoned any act on the part of the said employee, the said defendant, Alonzo D. Wilder, which act would give rise to a claim unedr said bond, or writing obligatory, under seal; nor has any loss arising under said bond, or writing obligatory, under seal, or any part thereof, been settled with or without the written consent of the said Sopchoppy State Bank.    That immediately upon becoming aware of any act, or acts, on the part of the said defendant, Alonzo D. Wilder, made a basis of this claim under said bond, or writing obligatory, under seal, the said Sopchoppy State Bank gave notice thereof by telegraph to the defendant, National Surety Company, at its home office in the City of New York, and subsequently gave notice to the said defendant, National Surety Company, by registered letter, addressed to the

said defendant, National Surety (Company) at its said home office, within ninety days after said loss under said bond, or writing obligatory, under seal, became apparent to the said Sopchoppy State Bank. That the said Sopchoppy State Bank, and the plaintiff herein has in all things complied with each and every of the terms, conditions and obligations of said bond, or writing obligatory, under seal, on the part of the said Sopchoppy State Bank, and the receiver thereof on its, or his part to be carried out and to be performed. That by reason of the fraud and dishonesty, including larceny, or embezzlement, or misappropriation of funds, as hereinbefore set forth, by the said defendant, Alonzo D. Wilder, the said defendant, Alonzo D. Wilder, became indebted to the said Sopchoppy State Bank for such sum, or sums, and the said defendant, National Surety Company, became liable to the said Sopchoppy State Bank for such wrongful acts aforesaid of the said defendant, Alonzo D. Wilder, to the extent and in the amount of not exceeding $10,000.00, and the interest thereon from the date of such acts of fraud, dishonesty, including larceny, or embezzlement, or misappropriation of funds, on the part of the said Wilder, but the said defendants have not, nor have either of them, paid the said sum, or any part thereof to the said Sopchoppy State Bank, or the plaintiff herein, though often requested so to do, but has neglected and refused, and still does neglect and refuse to pay the same to the great damage of the plaintiff.

"That on the 7th day of May, A. D. 1913, the plaintiff herein was by order of the Judge of the Circuit Court of the Second Judicial Circuit of Florida, in and for Wakulla County, in chancery sitting, in the suit of W. V. Knott, as Comptroller of the State of Florida vs. Sopchoppy State Bank, a corporation organized and existing

under and by virtue of the laws of the State of Florida, appointed receiver of the said Sopchoppy State Bank. That on the 11th day of October, A. D. 1913, in the said cause last above named, the said plaintiff was, by order of the Judge of the Circuit Court of the Second Judicial Circuit of Florida, in and for Wakulla County, in chancery sitting, authorized and empowered to employ counsel to sue in his own name as receiver of said Sopchoppy State Bank to recover such of the real and personal property, things in action, moneys, books, debts, legal and equitable interest, and all property and effects of any nature whatsoever, of the said Sopchoppy State Bank which belonged to the said bank at the time of the filing of the said bill of complaint in said cause, as said receiver had not already recovered and taken into his possession.

"Wherefore, the plaintiff sues and claims $20,000.00 damages."

"EXHIBIT 'B.'

"Proof of loss of Sopchoppy State Bank, a corporation under the laws of Florida with its place of business in the town of Sopchoppy, Wakulla County, Florida, made to the National Surety Company, a corporation under the laws of New York with its principal office or place of business at 115 Broadway, New York City, N. Y.

"To the National Surety Company:

"You will please take notice that by your bond numbered 663069 issued by your company on the 12th day of April, 1912, in consideration of the premium of twenty-five dollars to you duly paid, you, so designated in such bond agreed to reimburse the Sopchoppy State Bank, Sopchoppy, Florida, designated in such bond as the employer

within three months after satisfactory proof of loss for any pecuniary loss sustained by the employer by any act of fraud and dishonesty including larceny or embezzlement, forgery and misappropriation of funds committed by Alonzo D. Wilder, designated in such bond as the employee, in any position in the Sopchoppy State Bank's service during the term commencing on the first day of April, 1912, at twelve o'clock noon and ending on the first day of April, 1913, at twelve o'clock noon.

"That on the 29th day of July, 1912, it became known to the said Sopchoppy State Bank that its employee, the said Alonzo D. Wilder, had, as such employee of the said employer, been guilty of fraud and dishonesty including larceny or embezzlement, and the misappropriation of funds, such acts having been committed by the said employee Alonzo D. Wilder while in the service of the said employer, the said Sopchoppy State Bank, and subsequent to the first day of April, 1912, at twelve o'clock noon, and prior to the first day of April, 1913, at twelve o'clock noon, as is more particularly shown by an itemized statement of the loss of the said Bank hereto attached, marked Exhibit 'A,' and prayed to be taken as part hereof by reference, and the said Sopchoppy State Bank therefore claims of the said National Surety Company under said bond the sum of Ten Thousand dollars indemnity.

"That the said employer had no knowledge prior to the 29th day of July, 1912, that the said employee had been in arrears, or in default in any way whatever; that the said employer has had no knowledge that the said employee was gambling, speculating, or committing any disreputable, lewd or unlawful act; nor has it, the said Sopchoppy State Bank, in any way condoned any act giving rise to a claim under said bond; nor has any loss arising

thereunder been settled (with or without the written consent of the said Surety first obtained.)

"That upon becoming aware of any act or acts made the basis of this claim under said bond, the said Sopchoppy State Bank gave immediate notice thereof by telegraph to the said Surety at its home office, and subsequently gave notice by registered letter addressed to the said Surety at its home office, and within ninety days after the said loss under said bond became apparent to the said Sopchoppy State Bank it hereby files with said Surety an itemized claim under the said bond duly sworn to. That said Sopchoppy State Bank, upon request of the said National Surety Company, stands ready and willing to produce for investigation all books, vouchers, and evidence which the said Surety may require and to lend every assistance to bring the said employee to justice and to stand to, abide by, carry out and perform every other act or thing necessary or required of it, by and under the terms of said bond.

"SOPCHOPPY STATE BANK,

"By *A. B. WINN*,

"1st Vice President.

"Sopchoppy, Florida, October—1912.
"State of Florida,
"Wakulla County.

"Before me, the undersigned authority, personally appeared *A. B. Winn*, who, being first duly sworn, says that he is the First Vice-President of the Sopchoppy State Bank, a corporation under the laws of Florida with its office or place of business at Sopchoppy in said County and State, that he is authorized to make this oath, that he has read the foregoing proof of loss and that the facts stated therein are true, and that the said Bank has

actually sustained loss in the manner and to the extent and amount therein stated.

A. B. WINN.

"Sworn to and subscribed before me this the — day of October, A. D. 1912.

.... ... .................... .....

Notary Public, State of Florida at Large.

"SOPCHOPPY STATE BANK,

Sopchoppy, Fla., August 7, 1912.

Statement of errors and discrepancies against A. D. Wilder, Ex-Cashier, as of July 23rd, 1912.

| | |
|---|---:|
| To Debit from First National Bank Tallahassee, May 17th, 1912, unable to locate any record of same | $ 10.00 |
| To Debit memo from 1st. Nat. Bank Tallahassee, May 11, 1912, no record | 5.65 |
| To Difference in check on Peoples Bank Jacksonville, as credited on Cash Book, Check No. 95, $48.38. Should be as per check No. 95, $49.38, U-C | 1.00 |
| To difference in Savings deposit ticket, 6-20. Robt. Ashmore, credited with $11.00. Cash books reads, $5.00, U-C. | 6.00 |
| To difference in Deposit ticket of June 29th. Hilton Gwaltney, ticket reads Deposit, $3.00. Individual Ledger reads $8.00, O-C. | 5.00 |
| To check No. 3, on Peoples Bank, not on cash book | 55.49 |
| To Debit memo Peoples Bank 6-27, no record | 1.00 |
| To   "      "      "      "     7-5,  "      "    .... | 40.00 |
| To   "      "      "      "     7-6,  "      "    .... | 18.29 |
| To personal check on Peoples Bank 4-5-12....... | 10.00 |

$152.43

To Cashiers Check No. 22 not on cash book ................ 5.00

Sheet No. 1. $157.43
Exhibit 'B.'

## "SOPCHOPPY STATE BANK,
Sopchoppy, Fla., August 7th, 1912.

Statement of Overdrafts, chargeable to A. D. Wilder, Ex-Cashier.

As of July
23rd, 1912.

R. T. Alcorn ..................... ..........................28.57
I. T. Coleman ............. ..............................25.65
D. W. Syfret ..................... ....................... 3.00
A. D. Wilder ..................... ......... 4.95
P. A. Wood & Son ..................................21.76          $83.93

"Statements of credits on Individual Ledger not appearing on cash book,and for which no deposit ticket issued.

June 15th, 1912, A. D. Wilder ....4.75
June 18th, 1912, A. D. Wilder .... 25          $5.00
Sheet No. 2
Exhibit 'B.'

## "SOPCHOPPY STATE BANK,
Sopchoppy, Fla., August 7th, 1912.
Loans and Discounts.

Statement of loans made by Ex-Cashier, A. D. Wilder to irresponsible parties, without the consent or approval of the Board of Directors or Committee on Loans of said Bank, which is contrary to the By-Laws.

| Date of Note | Maker | Time | Amount |
|---|---|---|---|
| June 25th, 1912 | J. R. Lawhon, | 12 Months, | $500.00 |
| " 25th, " | J. R. Lawhon, | 12 " | 500.00 |

National Surety Co. et al. v. Williams—Statement.

| | | | | | | |
|---|---|---|---|---|---|---|
| ” | 27th, | ” | C. I. Guilford, | 12 | ” | 500.00 |
| ” | 27th, | ” | C. I. Guilford, | 12 | ” | 500.00 |
| ” | 27th, | ” | J. W. Wilson, | 12 . | ” | 500.00 |
| ” | 27th, | ” | J. W. Wilson, | 12 | ” | 500.00 |
| ” | 27th, | ” | J. W. Wilson, | 12 | ” | 500.00 |

Sheet No. 3.                                         $3500.00
Exhibit 'B.'

"SOPCHOPPY STATE BANK,
"Sopchoppy, Fla., August 7, 1912.

Statement of Notes of A. D. Wilder, Ex-Cashier for borrowed money from Sopchoppy State Bank, Sopchoppy, Fla., said loans were not referred to, passed on or approved by the Board of Directors or committee on loans, said act not in accord with the By-Laws.

"The Minutes of the Bank have been carefully examined, and shows no record of authorizing or disapproving the following:

| Dates of Notes. | | Name. | When Due. | | Amount. |
|---|---|---|---|---|---|
| May 7th, 1912, | A. D. Wilder, | | 6 months...... | | $750.00 |
| 13th, | ” | ” | 3 | ” | 250.00 |
| 23rd, | ” | ” | 6 | ” | 500.00 |
| 29th, | ” | ” | 6 | ” | 1,129.25 |
| 30th, | ” | ” | 4 | ” | 350.00 |
| June 7th, | ” | ” | 12 | ” | 360.00 |
| 10th, | ” | ” | 12 | ” | 350.00 |
| 15th, | ” | ” | 12 | ” | 290.00 |
| 22nd, | ” | ” | 60 | days | 75.00 |

National Surety Co. et al. v. Williams—Statement.

| July | 5th, | ” | ” | ” | ” | ...... | 300.00 |
|---|---|---|---|---|---|---|---|
| | 11th, | ” | ” | | ............... | | 500.00 |
| | 11th, | ” | ” | 12 months ...:.. | | | 500.00 |

Sheet No. 4.                       $5,354.25
Exhibit 'B.'

## "SOPCHOPPY STATE BANK

Sopchoppy, Fla., August 7th, 1912.

A. D. Wilder, Ex-Cashier,

To Sopchoppy State Bank, Sopchoppy, Fla., Dr.

Bills receivable account, as per daily balance,
July 23rd, 1912 ........................·.. $26,651.01

Inventory of bills receivable, July 23rd, 1912    24,207.01

Short .................................    $2,445.00

### Memo.

Bills Receivable taken as per Cash Book....   $28,226.65

Bills Rec. paid as per Cash Book...........    1,574.64

Agrees with Daily Report of July 23, 1912.. $26,652.01
Exhibit 'B.'

Sheet No. 5.

             D. F. McCoy, Auditor,

                  Statesboro, Ga."

## "SOPCHOPPY STATE BANK,

Sopchoppy, Fla., August 7th, 1912.

Surety Company account A. D. Wilder, Ex-Cashier,

        To Sopchoppy State Bank, Dr.

To Sheet No. 1, Errors and Discrepancies ....$    157.43

To Sheet No. 2, Overdrafts .................    83.95

To Sheet No. 2, Cash Credited on Individual
Ledger not appearing on Cash Book......    5.00

To Sheet No. 3, Notes representing loans made
    without authority of Board, or Loan Com-
    mittee .................. ........ .............:.    3,500.00
To Sheet No. 4, Notes representing borrowed
    moneys by A. D. Wilder, Ex-Cashier, with-
    out the authority of the Board of Directors,
    or Committee on Loan ..................    5,354.25
To Sheet No. 5, Bills Receivable short of
    ledger account .............. ...........    2,445.00

    Total ............................. $11,545.61
    Recapitulation.
· Exhibit 'B.'

                        D. F. McCoy, Auditor."

This count of the declaration was demurred to by the defendant National Surety Company on the following grounds:.

"(1). The said count does not allege the plaintiff has sustained a pecuniary loss under the terms of the instrument sued on.

"(2). The said count does not set forth or allege the act or acts of fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds, which occasioned the pecuniary loss, if any, sustained by the plaintiff under the terms of the instrument sued on.

"(3). The said count does not allege whether the loss claimed to have been sustained by plaintiff was through the fraud and dishonesty of Alonzo D. Wilder, or by his larceny, or by his embezzlement, or by his forgery, or by his misappropriation of funds."

At the same time the defendant filed the following pleas:

"(1). That by the terms of this defendant's bond sued on in the said count of plaintiff's declaration, the defendant's agreement as surety to reimburse the employer (Sopchoppy State Bank) within three months after satisfactory proof of loss for any pecuniary loss sustained by the employer (Sopchoppy State Bank) by any act of fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds, committed by the employee (the defendant Alonzo D. Wilder) in any position in the employer's service, during the term commencing on the 1st day of April, 1912, at 12 o'clock noon, and ending on the 1st day of April, 1913, at 12 o'clock noon, and the said defendant says that the alleged pecuniary loss of the Sopchoppy State Bank was not sustained by any act of fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds, committed by the said Alonzo D. Wilder during the time aforesaid.

"And for a second plea to the said count of the declaration the said defendant says:

"(2). That the Sopchoppy State Bank has never furnished the said defendant with satisfactory proof of the loss alleged in said count of the declaration to have been sustained by said bank.

"And for a third plea to the said count of the declaration the said defendant says:

"(3). That the Sopchoppy State Bank did not within ninety days after the date of the notice by telegraph and registered letter mentioned in the said count of the declaration file with the said defendant an itemized claim duly sworn to, as required by the terms of this defendant's bond sued on in said count of plaintiff's declaration.

"And for a fourth plea to the said count of the declaration the said defendant says:

"(4). That the Sopchoppy State Bank did not upon becoming aware of the alleged acts of the said Alonzo D. Wilder made the basis of its claim under this defendant's bond sued on in said count of the declaration give immediate notice thereof to this defendant at its home office by telegraph and by a registered letter as required by the terms of its said bond.

"And for a fifth plea to the said count of the declaration the said defendant says:

"(5). That the plaintiff's action on this defendant's bond sued on in the said count of the declaration was not commenced within a period of twelve months after the date of the Sopchoppy State Bank is alleged to have given notice to this defendant of the claim which it is alleged the said Bank had under the terms of the said bond.

"And for a plea to the second, third and fourth counts of the plaintiff's declaration, and to each thereof, this defendant says it never was indebted as alleged."

The demurrer to the declaration was overruled by the Circuit Judge, and a demurrer to pleas numbered four and five was also overruled.

The following replication was filed to pleas numbered four and five:

"Now comes the plaintiff, by his attorneys, and for replication to the 4th plea of the defendant. National Surety Company, to the first count of the plaintiff's declaration says:

"1st. That said Sopchoppy State Bank did, according to the terms of the said defendant bond, upon becoming aware of the alleged acts of fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds, committed by the said Alonzo D.

Wilder, and made the basis of the plaintiff's claim under this defendant's bond, give immediate notice thereof to the said defendant, National Surety Company, at its home office by telegraph and by registered letter as required theretin.

"2nd. That the said defendant, National Surety Company did, upon receiving notice from the plaintiff, Sopchoppy State Bank, by telegraph, sent July 29, 1912, to defendant at its home office in N. Y. City, of the alleged acts of fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds, committed by the said Alonzo D. Wilder, immediately send to the said Sopchoppy State Bank, at Sopchoppy, Florida, a duly authorized agent of the said defendant, National Surety Company, which said agent did, then and there upon his arrival at the Bank of said Sopchoppy State Bank, at Sopchoppy, Florida, enter into an investigation of the claim of said Sopchoppy State Bank against the said defendant, National Surety Company, for the pecuniary loss of the said Sopchoppy State Bank sustained by it through and by reason of the alleged acts of the said Alonzo D. Wilder, and that the said defendant, National Surety Company, did therefore, and did thereby waive the requirement in its said bond that the said Sopchoppy State Bank should give notice to the said defendant, National Surety Company, by registered letter.

"And for replication to the 5th plea of the defendant National Surety Company, to the first count of the plaintiff's declaration the plaintiff says:

"That the plaintiff did commence this action against the said defendant, National Surety Company, within a period of twelve months after the date the said Sop-

choppy State Bank gave notice to the said defendant of its claim and the amount thereof against the said defendant, National Surety Company, under its said bond."

Issue was joined on the first, second and third pleas of said defendant. A demurrer to plaintiff's second replication to defendant's fourth plea was overruled, and a motion that plaintiff be compelled to amend its replication to said defendant's fifth plea by striking out the words "and the amount thereof" having been granted, issue was joined on plaintiff's replications to defendant's fourth and fifth pleas.

The defendant Wilder also filed pleas to the declaration, upon which issue was joined.

Upon a trial of the case upon the issues thus made up, a verdict in the sum of $10,000.00, the amount of the bond, with interest from the date of the institution of said suit was rendered in favor of the plaintiff, upon which judgment was duly entered. A motion for new trial having been made and denied by the Circuit Judge, the case is here upon writ of error for review. Summons and severance was taken, and the writ of error is prosecuted by the National Surety Company alone.

*Fred T. Myers,* for Plaintiffs in Error;

*Francis B. Winthrop* and *W. J. Oven* for Defendant in Error.

WEST, J.—After stating the facts.

Numerous errors are assigned and argued, and while we may not take them up *seriatim,* we shall consider the several questions presented by them.

It is first contended that the court below erred in

overruling the demurrer of the defendant company to the first count of the plaintiff's declaration, and in support of this contention it is urged that it is not distinctly averred in this count that the plaintiff had suffered or sustained pecuniary loss under the terms of the bond sued on.

The declaration contains this averment: "the said defendant, Alonzo D. Wilder, while in the employ of the said Sopchoppy State Bank, at its banking house, or office, in the said town of Sopchoppy in Wakulla County, Florida, and while the said bond, or writing obligatory, under seal, was in full force and effect, and none of the conditions precedent to recovery had been in any way violated, ignored, or evaded, was guilty of fraud and dishonesty, including larceny or embezzlement and misappropriation of funds, as is more particularly shown by the itemized statement of the loss of said Sopchoppy State Bank furnished as the proof of such loss to the said defendant, National Surety Company, under and in accordance with the terms of said bond, or writing obligatory, under seal, and within the time therein and thereby required (a copy of which proof of loss, and itemized statement of the loss of said Sopchoppy State Bank in the manner and by the means so sustained as aforesaid, being hereto attached, marked exhibit 'B' and prayed to be taken as part hereof by reference). That the said property and funds so taken, embezzled or misappropriated by the said defendant, Alonzo D. Wilder, within the time hereinbefore stated, to-wit: Between the 1st day of April, 1912, at twelve o'clock noon, and the 29th day of July, A. D. 1912, was the property of the said Sopchoppy State Bank by means whereof the said defendant, National Surety Company, became, was and

is liable to pay to the said Sopchoppy State Bank and is indebted to the said Sopchoppy State Bank for the full sum of its said bond, namely, $10,000.00, and the said defendant, Alonzo D. Wilder, by reason of his wrongful acts in the premises set forth, became, was and is liable to pay the said Sopchoppy State Bank, and is indebted to the said Sopchoppy State Bank for the full sum lost by the said bank by reason of his said wrongful acts."

An exhibit may by apt words be made a part of a declaration *ex contractu* or *ex delicto*, and where both parties as well as the court below, have treated such an exhibit as a part of the declaration which can be reached by demurrer, this court will follow the example of the parties and the trial court and likewise so regard it when the case comes here on writ of error. Woodbury v. Tampa Water Works Co., 57 Fla. 243, text 249, 49 South. Rep. 556; State v. Seaboard Air Line. Ry., 56 Fla. 670, 47 South. Rep. 986.

It is true that the count of the declaration under consideration may not standing alone, and without the aid of the exhibit expressly and clearly set out the specific acts of the defendant Wilder which amounted to and constituted "fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds" within the meaning of these terms as they are employed in the bond, but if the exhibit which is made a part of this count ,taken in conection with its allegations, show acts and transactions of Wilder which come fairly within the definition of either of these terms and by such acts or transactions it appears that the plaintiff suffered pecuniary loss, then the alleged omission is supplied and the count is rendered good.

From the bill of particulars, which is made a part of this count, it appears, among other items, that during the time that Wilder was cashier of said bank he loaned to himself without authority, large amounts of the bank's funds aggregating a sum equal to one-third of the bank's capital stock; and it also appears from said bill of particulars that there was a shortage in the bills receivable, the bills receivable account showing one amount whereas an inventory of the bills receivable themselves showed a considerable less amount.

The declaration also contains the following averment: "That by reason of the fraud and dishonesty, including larceny ,or embezzlement, or the misappropriation of funds, *as hereinbefore set forth,* by the said defendant, Alonzo D. Wilder, the said defendant, Alonzo D. Wilder, became indebted to the said Sopchoppy State Bank for such sum, or sums, and the said defendant, National Surety Company, became liable to the said Sopchoppy State Bank for such wrongful acts aforesaid of the said defendant, Alonzo D. Wilder, to the extent and in the amount of not exceeding $10,000.00, and the interest thereon from the date of such acts of fraud, dishonesty, including larceny, or embezzlement ,or misappropriation of funds, on the part of the said Wilder, but the said defendants have not, nor have either of them, paid the said sum, or any part therof to the said Sopchoppy State Bank ,or the plaintiff herein, though often requested so to do, but has neglected and refused, and still does neglect and refuse to pay the same to the great daamge of the plaintiff."

The expression "as hereinbefore set forth" in the last quoted paragraph relates to the averment of fraud and dishonesty including larceny or embezzlement, or the

misappropriation of funds of said Wilder to which aver-
ment the bill of particulars is attached and made a
part, and we think such averments are prima facie suf-
ficient to show a misappropriation of funds and pecuniary
loss to the bank under the terms of the bond. Field v.
Howry, 132 Mich. 687, 94 N. W. Rep. 213.

In the case of Standard Phosphate Co. v. Lunn, 66
Fla. 220, 63 South. Rep. 429, in considering the question
of the sufficiency of a declaration, this court said: "a
court may not be held in error for overruling a demurrer
to an ambiguous pleading where such a pleading does
not put the opposing party at a disadvantage and when
under the allegations or averments of the pleading a
cause of action or a defense may fairly be shown by
proper evidence. In such cases the administration of
justice may be facilitated by a trial on the facts, the
party whose pleading is assailed being then advised of
its asserted defects, so as to furnish the requisite proofs
to fully sustain the action or defense, and the costs fol-
lowing the event of the litigation."

While we do not wish to be understood as approving
this form of pleading, we are of the opinion that under
the allegations of this count of the declaration a cause
of action was stated, and that no reversible error was
committed by the Circuit Judge in overruling the
demurrer. Standard Phosphate Co. v. Lunn, supra;
Tampa & J. R. Co. v. Crawford, 67 Fla. 77, 64 South.
Rep. 437.

It is also urged that the court below erred in per-
mitting the plaintiff to offer in evidence and in denying
defendant's motion to strike from the evidence the min-
utes of the meeting of the promoters and organizers of
the Sopchoppy State Bank held on February 1st, 1912,

at which meeting by-laws for the conduct of the affairs of said bank were adopted, and appear as a part of the minutes of the meeting. Letters patent incorporating said bank were not issued until March 6th, 1912, and on behalf of plaintiff in error it is contended that inasmuch as this bank had no corporate existence at the time the meeting was held at which the by-laws were adopted, they cannot be held to be the by-laws of the corporation. The reply of the defendant in error is that the by-laws were ratified by the corporation at a meeting of the stockholders held on May 4th, 1912. From the minutes of the meeting of the stockholders of the bank held on May 4th, 1912, it appears that the minutes of the meeting held on February 1st, 1912, of which the by-laws then adopted were a part, were "read and unanimously approved as read." At the same meeting the by-laws were amended so as to increase the number of directors of the corporation and several committees appointed at the previous meeting reported and the reports were received and approved.

It is well settled that a corporation may ratify, confirm or adopt the contracts of its promoters (Cook on Corporations, 7th ed. Sec. 707), and there is no reason why the stockholders of a corporation may not ratify by-laws adopted by its promoters before letters patent have been issued and delivered to it. The Circuit Judge held upon the showing made in this case that the by-laws had been ratified by the stockholders of the corporation as the by-laws of such corporation, and we are not prepared to say that he erred in doing so.

Plaintiff in error also contends that the suit was not brought within the time prescribed by the terms of the bond. This contention requires a consideration of the following provisions of the bond:

"2nd.  Upon becoming aware of any act which may be made the basis of a claim hereunder the employer shall give immediate notice thereof to the Surety at its home office by telegraph at Surety's expense and by a registered letter, and within ninety (90) days after the date of said notice, file with the Surety an itemized claim hereunder, duly sworn to, and upon request produce for investigation all books, vouchers and evidence which the Surety may require, and lend every assistance to bring the employee to justice."

"8th.  No action or proceeding at law, or in equity, shall be brought to recover from the Surety any claim under this bond. unless commenced within a period of twelve months after the date the employer shall have given notice of claim."

Such conditions are valid and enforceable, the contract having been entered into before Chapter 6465 Acts of 1913 became effective (Taylor v. Glens Falls Ins. Co., 44 Fla. 273, 32 South. Rep. 887; Jackson v. Fidelity & Casualty Co., 75 Fed. Rep. 359; Riddlesbarger v. Hartford Ins. Co., 7 Wall. (U. S.) 386), but as a preliminary inquiry we should consider the nature of the obligation of the plaintiff in error on this bond.  If it is one simply of suretyship doubtful questions should be resolved in its favor; but if, on the other hand it is entered into and the bond is issued for a money consideration and for pecuniary gain the surety company is regarded as an insurer, whose contracts, being drawn by itself are, if there is ambiguity in the language employed in them to be resolved most strongly against it.  The obligation of the plaintiff in error is, we think, clearly within the latter class.  It is in the form of an indemnifying bond or policy of insurance for the integrity of Wilder as Cashier of said bank, and is in effect a con-

tract of insurance to which the rules governing ordinary contracts of insurance are applicable. 32 Cyc. 306-7; Bryant v. American Bonding Co., 77 Ohio St. 90, 82 N. E. Rep. 960; American Bonding Co. of Baltimore v. Morrow, 80 Ark. 49, 96 S. W. Rep. 613; Hormel & Co. v. American Bonding Co. of Baltimore, 112 Minn. 288, 128 N. W. Rep. 12; People ex rel. Kasson v. Rose, 174 Ill. 310, 51 N. E. Rep. 246; Bank of Tarboro v. Fidelity & Deposit Co. of Maryland, 128 N. C. 366, 38 S. E. Rep. 908; Champion Ice Mfg. & Cold Storage Co. v. American Bonding & Trust Co., 115 Ky. 863, 75 S. W. Rep. 197; American Surety Co. of New York v. San Antonio Loan & Trust Co., (Tex. Civ. App.) 98 S. W. Rep. 387; Remington v. Fidelity & Deposit Co. of Maryland, 27 Wash. 429, 67 Pac. Rep. 989; Cowles v. United States Fidelity & Guaranty Co., 32 Wash. 120, 72 Pac. Rep. 1032; American Surety Co. of New York v. Pauly, 170 U. S. 133, 18 Sup. Ct. Rep. 552. In the last cited case the Supreme Court of the United States in dealing with the question of the construction of a similar bond, said: "If, looking at all its provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to the bank and the other favorable to the Surety Company, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers or agents of the Surety Company. This is a well established rule in the law of insurance. *National Bank* v. *Insurance Co.,* 95 U. S. 673; *Western Ins. Co.* v. *Cropper,* 32 Penn. St. 351, 355; *Reynolds* v. *Commerce Fire Ins. Co.,* 47 N. Y. 597, 604; *Travellers' Ins. Co.* v. *McConkey,* 127 U. S. 661, 666; *Fowkes* v. *Manchester & Life Ass'n.,* 3 Best

& Smith, 917, 925.    As said by Lord St. Loenards in *Anderson* v. *Fitzgerald*, 4, H. L. Cas. *484, *507, 'it (a life policy) is of course prepared by the company, and if therefore there should be any ambiguity in it, must be taken, according to law, most strongly against the person who prepared it.'    There is no sound reason why this rule should not be applied in the present case.    The object of the bond in suit was to indemnify or insure the bank against loss arising from any act of fraud or dishonesty on the part of O'Brien in connection with his duties as cashier, or with the duties to which in the emyloper's service he might be subsequently appointed. That object should not be defeated by any narrow interpretation of its provisions, nor by adopting a construction favorable to the company if there be another construction equaly admissible under the terms of the instrument executed for the protection of the bank."

The rule for the interpretation of insurance contracts is that "in all cases the policy must be liberally construed in favor of the insured so as not to defeat without a plain necessity his claim to the indemnity which in making the insurance it was his object to secure." L'Engle v. Scottish Union & National Fire Ins. Co., 48 Fla. 82, 37 South. Rep. 462; Caledonian Ins. Co. v. Smith, 65 Fla. 429, 62 South. Rep. 595.

The alleged defalcation of Wilder as Cashier of the bank was discovered by the bank in July, 1912, and the Surety Company, plaintiff in error, was immediately notified by it thereof by telegraph and registered letter. The proof of loss with an itemized statement of claim under the bond was made in October, 1912, and this suit on the bond was commenced in October, 1913.

It is conceded that the suit was "commenced within

a period of twelve months after the date" upon which the "itemized claim hereunder duly sworn to" was filed with the surety, but it is said that this is not sufficient, and it is contended that a proper interpretation of the two quoted provisions of the bond lead to and require the conclusion that a suit to recover on the bond must be commenced within a period of twelve months after the "immediate notice" to the surety by telegraph and registered letter "of any act which may be made the basis of a claim" under said bond. We cannot accept this view. The "notice of claim" referred to in paragraph 8th, after the giving of which suit shall be brought within twelve months, is in our opinion the itemized claim duly sworn to and not the immediate notice of any act which may be made the basis of a claim required to be given by paragraph 2nd. When this notice is given there may in fact be no claim. It is simply notice of an act or condition that may develop into a claim. The language is clearly susceptible of this interpretation. The original bond is before us and is upon the printed form of the Surety Company, plaintiff in error, and as we have seen in such a case where the language employed is ambiguous or doubtful, it must be given the strongest interpretation against the insurer that it will reasonably bear. We conclude therefore that the court below did not err in holding that the suit was brought within the twelve months period after the notice of claim had been given. Remington v. Fidelity & Deposit Co. of Maryland, *supra*.

It is next contended that the court erred in denying the motion of plaintiff in error to strike from the redirect examination of the witness Lawhon all testimony of this witness relating to what was designated by him as the Jacksonville Certificate of Stock.

The testimony on this point was elicited upon the cross-examination of the witness by counsel for plaintiff in error, and it was not objected to until the evidence was closed, when a motion was made to strike the testimony on the ground that what took place between the witness and Wilder after Wilder's connection with the bank had ceased could in no way bind the Surety on his bond as Cashier.

It is urged now on behalf of plaintiff in error that the transaction alluded to, and the conduct on the part of Wilder in connection with it, testified above, tended to discredit him with the jury and to prejudice the status of said Company as Surety on his bond.

It appeared from the testimony that the witness had given two sets of notes, each aggregating $1,000.00, one set for stock in a Jacksonville Insurance Company, the other for stock in an Atlanta Insurance Company. All these notes were handled by the bank, but no claim for loss is made on account of its having handled the notes given for the Jacksonville Certificates. This matter having been referred to by the witness upon his cross-examination, it cannot be said to have been prejudicial error for him to explain, without objection, upon redirect examination what occurred between him and Wilder in reference to it. The rule is that objections to the admissibility of evidence must as a general thing be made when it is offered, or its admissibility cannot be assigned as error. Schley v. State, 48 Fla. 53, 37 South. Rep. 518; Williams v. State, 58 Fla. 138, 50 South. Rep. 749; McMillan v. Reese, 61 Fla. 360, 55 South. Rep. 388. There was no reversible error in this ruling.

Other assignments are based upon several special charges given or refused by the Circuit Judge defining

various words and terms contained in the bond sued upon. In view of the difference of opinion that seems to exist in regard to the meaning and application of the words and terms so defined, it was proper, we think, that the instructions complained of be given, and it does not appear that such instructions were erroneous.

The refusal of the Circuit Judge to give the following charges requested by plaintiff in error is assigned as error:

"6. I further charge you that if you find from the evidence that any of the notes held by the Bank, and that came into the possession of the plaintiff, that are scheduled in Sheet No. 3, Exhibit B, and Sheet No. 4, Exhibit B, attached to the declaration, were not discounted by the Bank in the usual way, that is by the payment of money, but that time certificates of deposit were issued to the holder of such notes by the Bank, and that such certificates were not paid by the Bank within the twelve months from April 1st, 1912, at 12 o'clock noon, to April 1st, 1913, at 12 o'clock noon, or since and before the institution of this suit, then the amounts of such note or notes should not be included in any finding you should make for the plaintiff, if you should find for him."

"7. I further charge you that if you find from the evidence that the two notes of J. R. Lawhon, dated June 25th, 1912, and payable twelve months after date, for $500.00 each, and the two notes of C. I. Guilford, dated June 27th, 1912, and payable twelve months after date, for $500.00 each, and the three notes of J. W. Wilson, dated June 27th, 1912, and payable twelve months after date, for $500.00 each, and the two notes of A. D. Wilder, dated July 11th, 1912, and payable twelve months after

date, for $500.00 each, which were offered in evidence by the plaintiff, were taken by the Bank from the holders and time certificates of the bank were issued to the holder or holders, and that said certificates have not been paid by the bank or the Receiver, you should not include any of said notes in the liability of the defendant, National Surety Company under its bond, if you should find any liability at all on the part of said defendant."

Did the Circuit Judge err in refusing to give this charge?

The agreement of the Surety on the bond was to reimburse the bank upon satisfactory proof of loss, "for any pecuniary loss sustained by" it "by any act of fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of funds.'

It appears from the testimony that the notes referred to in these requested charges were taken by Wilder for the bank, and that certificates of deposit were issued therefor. The certificates had not at the time of the institution of this suit been paid and the bank still held the notes for which they were given. In this situation can it be said that the bank has sustained *pecuniary loss* as a result of the *fraud and dishonesty* including larceny or embezzlement, forgery and *misappropriation of funds* by Wilder, its Cashier?

With reference to the notes taken from persons other than Wilder himself we think the claim is not sustained. It may be that in taking such notes he acted in good faith believing it to be for the best interest of the bank, and it appears that two of these notes were made by a vice-president and director of the bank and the others were made by citizens of the community. At any rate

it cannot be said that there was any fraudulent or dishonest design or purpose in taking such notes, nor that the bank has sustained "pecuniary loss" as a result of the fraud and dishonesty, including larceny or embezzlement, forgery and misappropriation of the funds by its Cashier Wilder on account of this transaction.

With reference however to the two notes of Wilder himself, referred to in these charges, the case is different. It appears from the testimony that these notes were put in the bank by Wilder on July 11th, 1912, eighteen days before he left the bank. He testifies that the notes were put in the bank and a certificate of deposit was issued by the bank to the Rock Island Sponge Company for a like amount, whereupon this company issued to him, Wilder, its certificate of stock for a number of shares of its capital stock which he was purchasing. In other words Wilder was purchasing certain shares of stock in this company with the funds of the bank and placing his note in the bank for the funds which he used for this purpose. A "misappropriation of funds" does not necessarily mean a misappropriation of actual cash, because "funds" is a much more comprehensive term, and may include other assets or property of the bank. Montgomery County v. Cochran, 57 C. C. C. 261, 121 Fed. Rep. 17; In re Tatum, 61 App. Div .(N. Y.) 513, 70 N. Y. S. 634; Miller v. Bradish, 69 Iowa 278, 28 N. W. Rep. 594; Dow v. United States, 27 C. C. A. 140, 82 Fed. Rep. 904; Ramsey v. Cox, 28 Ark. 366. And when Wilder put his note, which was of no value in the bank and issued a certificate of deposit of the bank for a like amount which he used to purchase property for himself, the transaction was in legal effect the same as if he had taken the cash out of the bank and used it in

31—Vol. 74

the purchase of such property. In this situation it cannot be successfully contended that he has not misappropriated the funds of the bank from which it has suffered pecuniary loss; nor that such misappropriation was not fraudulent and dishonest. It follows, therefore, that while the defendants were entitled to a charge of this kind with reference to the notes of Lawhon, Guilford and Wilson, the court cannot be held in error for refusing to give the charge as drawn ,because the defendants were not entitled to such a charge with reference to the notes of Wilder.

We are of the opinion that the plaintiff in error is not liable under its bond for the amount of Wilder's notes given for twenty shares of stock in the bank for which certificates of stock were issued to him and that the Circuit Judge erred in refusing to give the requested instruction on this subject. It appears that Wilder gave his notes for this stock ,as did several other stockholders, and he testifies, and it is not contradicted, that when his connection with the bank was severed, inasmuch as these notes were still unpaid, he left the certificates in the bank, and thereafter made no claim to own the stock. We think that it connot be said that the bank has sustained pecuniary loss as a result of this transaction.

The court also erred in refusing to give the charge requested in reference to the items included in the statement of "errors and discrepancies," since there was no evidence to show that such errors resulted from the fraud and dishonesty of Wilder. This is likewise true of the items included in the statement of overdrafts, and of the small item on the individual ledger credited to Wilder's personal account not appearing on the cash book.

It will be noted that the various transactions which are the basis of this action occurred before the passage of Chapter 6426, Acts of 1913, Laws of Florida.

With reference to the remaining items in this claim, namely, the notes of Wilder as shown by Sheet No. 4, Exhibit 'B' as follows: note dated May 23rd, 1912, for $500.00, note dated May 30th, 1912, for $350.00, note dated June 7th, 1912, $360.00, note dated June 10th, 1912, $350.00, noted dated June 15th, 1912, $290.00, note dated June 22nd, 1912, $75.00, note dated July 5th, 1912, $300.00, the two notes dated July 11th, 1912, each for $500.00, and $129.25 of note dated May 29th, 1912, not used in the purchase of bank stock, aggregating $3,354.25, and the amount of the difference between his bills payable account and the actual amount of the bills payable held by the bank amounting to $2,445.00, we think the case was made out.

Where it is proven that a Cashier of a bank has "loaned" to himself, without authority, excessive amounts of the bank's funds, without taking security therefor, and that his bills receivable are considerably less in their aggregate amount than his bills receivable account carried on the books of the bank, it cannot be said that it has not been proven that he has misappropriated the funds of the bank. The fact that he placed his worthless notes in the bank for the amount of the funds used or taken by him does not affect the substance of the transaction, nor change its real character. It is admitted in this case that the bills receivable account is in excess of the aggregate amount of the bills receivable actually held by the bank, and it is apparent that the jury declined to accept Wilder's explanation of this difference.

It is not necessary for the plaintiff in a suit on a bond

conditioned as this bond is conditioned, to offer proof
sufficient to convict the principal of embezzlement or
larceny before liability upon the bond attached: Cham-
pion Ice Mfg. & Cold Storage Co. v. American Bonding
& Trust Co., *supra*. In this case, considering a similar
question, the Supreme Court of Kentucky said: "It is
not necessary, in order to fix the liability of appellee
upon the bond, that appellant should produce, in sup-
port of any claim that it might have arising thereunder,
such proof as would convict Weitkamp of the crime of
larceny or embezzlement as defined by the laws of Ken-
tucky. Such a narrow construction of the provisions
of the contract is not required by the law, and was never
contemplated by the parties to it. While larceny is a
common-law crime, yet in this State it is to a great
extent statutory. Embezzlement is purely a statutory
crime, but the terms 'larceny' and 'embezzlement,' in the
bond or policy sued on, are used as generic terms to
indicate the dishonest and fraudulent breach of any duty
or obligation upon the part of an employe to pay over
to his employer, or account to him for, any money,
securities, or other personal property, the title to which
is in the employer, that may in any manner come into
the possession of the employe."

It appears that after Wilder left the bank he deposited
in it from time to time sums aggregating $1,417.93, and
that when the receiver was appointed he, Wilder, had a
balance of that amount on deposit in the bank. It is
now insisted that this amount should be deducted from
any amount for which his surety, the plaintiff in error,
is liable. We cannot accept this view. We have seen
that Wilder had various obligations in the bank, and if
this deposit is to be applied to his obligations, the plain-

tiff in error has no right to insist that it be applied to the ones that it is liable for.

Since the items improperly included in the verdict are separable and may be eliminated and the items held to be proven were necessarily included in it, the amount of either of them alone being in excess of the difference between the amount of the verdict and the total amount of the claim, the plaintiff below will be given the privilege of remitting the amount of the items improperly included in the judgment. Greenblatt v. McCall & Co., 67 Fla. 165, 64 South. Rep. 748; Seaboard Air Line Ry. v. Simon, 56 Fla. 545, 47 South. Rep. 1001, 20 L. R. A. (N. S.) 126, 16 Ann. Cas. 1234; Turner v. Adams, 39 Fla. 86, 21 South. Rep. 575; Arnau v. First Nat. Bank, 36 Fla. 395, 18 South. Rep. 790.

If the defendant in error do within thirty days enter a remittitur for the amount of the items improperly included in the judgment, thus reducing the amount of the judgment to $5,799.25, the sum of the two items held to be within the terms of a bond and proven at the trial of the case, with interest from the date the action was begun, effective as of the date of the rendition of the judgment, the judgment will be affirmed; otherwise the judgment is reversed.

BROWNE, C. J. AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.