## RAILROAD *v.* DIES.

### (*Nashville.*  January 30, 1892.)

1. COMMON CARRIER.  *Void stipulation against liability for negligence.*

   A common carrier is not protected against liability for loss of goods resulting from defects in car, the existence of which affords evidence of negligence, by a stipulation in the bill of lading accepted by the shipper to the effect that he had examined the car for himself, and found it in good order, and accepted it as "suitable and sufficient" for the purpose of his shipment.

2. SAME.  *Liability for defects in cars used, though belonging to another.*

   A common carrier is liable for loss of goods resulting from defects in car used for transportation, the existence of which imply negligence, although the car belonged to another, and was procured by the carrier for the particular shipment at the special request of the shipper, upon his paying the additional expense, and the shipment was made in its then condition—the car being of a kind acceptable to the carrier, and commonly used in making like shipments.

   Case cited: 102 U. S., 452.

---

### FROM DAVIDSON.

---

Appeal in error from the Circuit Court of Davidson County.  W. K. McALISTER, J.

BAXTER SMITH for Railroad.

STOKES & STOKES for Dies.

12—7 P

LURTON, J.   Mr. Dies shipped from Nashville a car-load of live stock, destined to San Antonio, Texas. The shipment was upon special terms, contained in a printed live-stock contract. One of the stipulations in this contract was in these words:

"And it is further understood and agreed that said party of the second part has examined and found in good order the car or cars provided by the said party of the first part for the transportation of said animals, and hereby accepts the same, and agrees that they are, as thus provided, suitable and sufficient for said purpose."

There was evidence tending to show that a stallion shipped under this contract sustained injuries, due to a defect in the car, from which it died. There was a jury and verdict for plaintiff.

The Court was asked to charge in reference to the provisions above quoted, "that the live-stock contract that was read in evidence having been signed and held by plaintiff, and he having acted under it, and that by one of the terms of it the plaintiff acknowledges that the car in which the stock was shipped was safe and sufficient, he is now estopped from alleging that it was unsafe and unsuitable."

This was refused. This was not error. Railway companies are common carriers of live stock, and incur the same liability as carriers of other property, subject only to the limitation that they are excused if the loss is attributable to the intrinsic qualities or nature of the animal. But it

Railroad *v.* Dies.

is equally as well settled that they may limit this common law liability as insurers by a special contract, on sufficient consideration, provided such exemption shall not operate to exempt them from the consequences of their own negligence. The duty of a common carrier of freight is to furnish cars suitable and safe. Any failure in this regard which could have been avoided by due care is negligence.

If this agreement to accept this car as safe and suitable is to be construed as estopping the shipper from relying upon the fact that it was not safe or in repair, then the effect of the contract would be to release the carrier from the consequence of its own negligence in furnishing an unsafe vehicle.

If a shipper can conclude himself by his agreement as to the car in which his freight was shipped, he could, for the same reasons, agree as to the suitableness and safety of the roadway, engines, etc. Such a contract would be invalid, as operating to cast upon the shipper the duty of inspecting and determining the safety and sufficiency of the means the carrier has provided for the discharge of his public duties. Its necessary effect would be to release it from liability for its own negligence in failing to provide safe and suitable vehicles. The effect of this agreement, as *evidence* of the condition of the car, the defect relied on being quite an obvious one, if it existed at all, was fully covered by the charge as deliv-

ered; and the charge in this respect is not objected to.

The Court was further requested to charge:

"That if the proof shows that the plaintiff was unwilling to accept an ordinary freight-car, such as the defendant could furnish, to ship his stock in, and that he had Mr. Champe to procure a palace horse-car for that purpose from a different company, he (plaintiff) paying that company for the use of its car, that then, and in that case, it was the duty of the plaintiff, or of the company from which he obtained the car, to inspect it and see that it was safe and sufficient for the purpose of shipping his stock in, and it was no part of defendant's duty to do so."

This was refused. The evidence shows that Mr. Dies did procure the agent of the railway company to get for his use a car known as an Arms' Palace Horse-car. This car was owned by an independent company, who were paid for its use by Mr. Dies. It was brought to Nashville, and here loaded with this stock, and then put in the train of the Louisville and Nashville Company, who had contracted for the carriage of this stock. The place of such cars in modern transportation is well described by Mr. Champe, the agent of the railway company, through whom Mr. Dies contracted for its use. He says:

"It is quite an advantage to defendant to use the said palace cars, and a great deal of stock is shipped that way; the defendant railway company

procuring for the shipper such cars. These palace stock-cars occupy to the shipment of stock the same place that palace sleeping-cars do to passengers traveling over our road."

The carrier cannot escape responsibility by carrying its freight in cars furnished by or owned by another company. It was a common carrier with respect to this shipment, and it was a matter of no importance who owned or furnished or paid for the particular car into which this stock had been loaded. This has been thoroughly well settled with respect to its liability to passengers.

In the case of *Railway Company* v. *Ray* the passenger was injured by reason of a defect in a Pullman palace car in which he was riding. Although the car belonged to the Pullman Company, and was in the immediate control of its own agents and employes, yet the Supreme Court of the United States was unanimously of opinion that this car, being a part of the train under the control of the railway company, made the latter liable for any defect in the car whereby one of its passengers was injured. 102 U. S., 452.

So in the case of *Railroad* v. *Katzenberger*, 16 Lea, the railway company was held liable for the loss by a passenger of his hand baggage, while riding in a sleeping-car under the special care of the servants of an independent sleeping-car company. That the car made a part of the train of the railway company fixed its responsibility as a carrier. The rule applicable to the carriage of

Railroad *v.* Dies.

passengers in the cars of an independent company applies with full force to the carriage of stock in special cars owned by an independent company.

There was no error in refusing to charge as requested. The other errors assigned have been examined, none of them are well taken.

Judgment affirmed.