LOUISVILLE AND NASHVILLE RAILROAD COMPANY, *Plaintiff in Error,* v. J. A. CARR AND A. S. CARR, COPARTNERS DO-ING BUSINESS AS LIBERTY NAVAL STORES COMPANY, *De-fendants in Error.*

Opinion filed April 21, 1919.

1.  It is not *per se* error to overrule a demurrer to a plea which amounts to the general issue or to a replication which amounts merely to a joinder of issue upon a plea.

2.  A demurrer to a pleading upon the ground that it is vague, indefinite, uncertain and insufficient presents nothing for consideration unless upon a bare inspection of the pleading it appears to be so faulty as to constitute no defense or reply.

3   A common carrier of merchandise is not relieved of liability for loss of the goods merely because the shipper furnished the car in which the goods were loaded where the car was leased from a third person and for the use of such car upon the road the carrier pays to the owner a certain amount per mile and the loss of the goods in transportation is due to a defect in the particular car.

4.  A common carrier is not permitted to contract against its own negligence.

A Writ of Error to the Circuit Court for Gadsden County; E. C. Love, Judge.

Judgment affirmed.

*Paul Carter,* for Plaintiff in Error;

*Myers & Myers,* for Defendants in Error.

ELLIS, J.—The defendants in error, hereinafter referred to as the plaintiffs, brought an action in the Circuit Court for Gadsden County against the Louisville and Nashville Railroad Company to recover for the value of 5152 gallons of spirits of turpentine alleged to have been shipped by the plaintiffs from Sumatra, Florida, a station on the line of railroad of the Apalachicola Northern Railroad Company, to Cincinnati, Ohio, to be delivered to the order of the plaintiffs with directions to notify the Moore Oil Company at Cincinnati. The declaration alleges in the first count that the turpentine was delivered to the Apalachicola Northern Railroad on November 18, 1915; that the turpentine was contained in a tank car and was to be transported by that railroad company and its connecting carriers by rail to Cincinnati and there delivered as above stated; that the Apalachicola Northern Railroad issued its bill of lading for the car of turpentine and acknowledged that the same was in apparent good order; that the railroad delivered the car of turpentine to the defendant, a connecting carrier, at River Junction, in good order and the defendant undertook to transport the car and its contents to the point of destination, but the defendant failed to deliver the same to the plaintiffs or their order at Cincinnati, or elsewhere; that the plaintiffs within four months after a reasonable time for delivery made claim in writing at the point of origin of the shipment for their loss, but the defendant refused to pay the same.

The second count alleged that the defendant received at River Junction the car of turpentine belonging to the plaintiffs, for transportation to Cincinnati and to be delivered to the plaintiffs or their order, but the defendant failed to deliver the same to the plaintiffs or their order,

or to anyone for them at said destination, or elsewhere, and the plaintiffs made claim in writing for the loss, but the defendants refused to pay the same.

The defendant pleaded never promised as alleged. For a fifth plea, that the bill of lading issued by the initial carrier contained a provision that the carrier, defendant, should not be liable for any loss resulting from the "act or default of the shipper or owner;" that the loss was occasioned solely by the default of the shipper because the tank car in which the turpentine was shipped was furnished by the Apalachicola Northern Railroad Company, and that the car was old, worn and defective "by reason of the threads on the drain pipe and cap on same being worn," which fact the plaintiffs knew, but nevertheless loaded the turpentine in the car and delivered it to the Apalachicola Northern Railroad; that the turpentine was lost in transit by "reason of said cap coming off and said threads being old, worn and defective" and the turpentine running out through the drain pipe. A sixth plea averred that the bill of lading provided that the carrier should not be liable for any loss occasioned by the act or default of the shipper; that the loss of the turpentine was occasioned solely by the default of the shipper in that the tank car was constructed for shipping oil, turpentine and like goods in bulk; that it was equipped for loading by means of an opening at the top, and for unloading by means of a "drain pipe or hole in the bottom," all of which the plaintiff knew; that the car was a private car of the plaintiff's under a lease to them, and when furnished by them to the Apalachocila Northern Railroad was old, worn and defective in that the threads on the said drain pipe were worn, and the "drain pipe came off" while the car was being transported and the contents of

the car ran out; that the plaintifs at the time of loading
the turpentine in the car and delivering it to the railroad
for transportation knew of the worn and defective condi-
tion of the drain pipe.

The plaintifs demurred to the fifth plea, which de-
murrer was sustained, and interposed five replications to
the sixth plea. These replications set up first, that the
car was the property of the German-American Car Com-
pany and was being used by the plaintiffs under an agree-
ment whereby the plaintiffs were to pay the car company
for such use thirty dollars per month; that the defendant
paid to the car company ¾ of a cent per mile for the use
of the car on its lines, which amount so paid was cred-
ited on the plaintiffs' account with the car company;
that the car company agreed to maintain the car accord-
ing to certain requirements of railroad companies and
existing "M. C. B. Rules;" that it was the custom of the
railroad company to inspect the car in transit, make
necessary repairs and charge the same to the car com-
pany; that the car had made three consecutive trips to
Cincinnati over the defendant's railroad before the trip
on which the turpentine was lost, and on its last return
was loaded promptly by the plaintiffs; second, that the
car was not worn and defective in the particulars averred
in the plea; third, that the loss of the turpentine was not
due to the worn conditions of the threads on the drain
pipe and cap; fourth, that if the defects existed in the
car as averred, they were latent and could not be discov-
ered by the plaintiff by the exercise of ordinary care, and,
fifth, that it was not true that the loss of the turpentine
was due solely to the default of the plaintiffs.

The defendant demurred to these replications, first,
upon the ground that they are vague, indefinite, uncer-

tain and insufficient; second, that the first replication was bad because the fact that the defendant paid the car company for the use of the tank car did not relieve the plaintiffs of the duty to keep the car in repairs; third, the first replication is bad because the agreement of the plaintiffs with the car company to keep the car in repair was not binding on the defendants; fourth, it is not averred in the first replication that the defect in the car which caused the loss was not a latent defect, or was one discoverable by the defendant on inspection or that an inspection by the defendant would have discovered the defect and avoided the loss; that the second, third and fifth replications amounted to the general issue, and that the fourth replication was bad because, if the defect in the car was latent that fact would not make the defendant liable for a loss caused by the defect while it was transporting the plaintiffs' car." This demurrer was overruled, and such order constitutes the basis of the second, third, fourth, fifth, sixth and seventh assignments of error, which are discussed together in plaintiffs' brief.

The rule obtains that it is not *per se* error to overrule a demurrer to a plea which amounts to the general issue. We apply this rule to a replication which amounts merely to a joinder of issue upon a plea. Therefore there was no error on the part of the court in overruling the demurrer to the second, third and fifth replications, assuming that they amounted merely to a joinder of issue upon the sixth plea. If they were amenable to that criticism a motion to strike was the proper remedy, and as the replications do not appear to have confused the issues or embarrassed the defendant in the preparation of his defense, allowing them to remain in the record was not reversible error. See Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, text

428, 43 South. Rep. 318; Bell v. Niles, 61 Fla. 114, 55 South. Rep. 392; Southern Home Ins. Co. v. Putnal, 57 Fla. 199, 49 South. Rep. 922. See, also, National Surety Co. v. Williams, 74 Fla. 446, 77 South. Rep. 212.

The first ground of the demurrer presents nothing for consideration unless upon a bare inspection of the replications they appear to be so faulty as to constitute no reply to the pleas. See Hartford Fire. Ins. Co. v. Hollis, 58 Fla. 268, 50 South. Rep. 985.

This leaves for consideration the second, third and fourth grounds of the demurrer to the first replication, and the demurrer to the fourth replication.

The question presented by the first replication and demurrer thereto is whether a common carrier of goods or merchandise is in any measure relieved of its liability for loss of the goods, because of the fact that the shipper furnished the car in which the goods were loaded, which car he held by lease from a third person, and for the use of such car upon the road the carrier paid to the owner a certain amount per mile, when the loss of the goods in transportation is due to a defect in the particular car.

This was an interstate shipment and the liability of the carrier is to be determined according to the rules prescribed by Congress as to the duties of common carriers with respect to the transportation of goods from one State into another. The measure of this liability was fixed by the amendment of June 29, 1906, to the original Interstate Commerce Act of February 4, 1887, and commonly referred to as the Carmack Amendment. The liability imposed upon the carrier was defined by Mr. Justice LURTON in the case of Adams Exp. Co. v. Croninger, 226 U. S. 491, 57 L. Ed. 314, 33 Sup. Ct. Rep. 148, 44 L.

R. A. (N. S.) 257, in the following language: "What is the liability imposed upon the carrier? It is a liability to any holder of the bill of lading which the primary carrier is required to issue 'for any loss, damage, or injury to such property caused by it,' or by any connecting carrier to whom the goods are delivered. The suggestion that an absolute liability exists for every loss, damage or injury from any and every cause would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To give such emphasis to the words 'any loss or damage' would be to ignore the qualifying words 'caused by it.' The liability thus imposed is limited to 'any loss, injury or damage caused by it or a succeeding carrier to whom the property may be delivered;' and plainly implies a liability for some default in its common-law duty as a common carrier." See, also, Cincinnati, N. O. & T. P. R. R. Co. v. Rankin, 241 U. S. 319, 36 Sup. Ct. Rep. 555.

Now it is the common law duty of a common carrier to furnish suitable and safe cars for the carriage of the particular kind of commodity undertaken to be conveyed. See 4 R. C. L., p. 682. "In every case where a carrier has been accustomed or has contracted to carry or has held itself out as carrying any particular class of goods it must provide cars which are suitable for the carriage of such goods. This imports that a common carrier must provide a vehicle in all respects adapted to the purposes of carriage which implies not only that it must be a type so constructed as to be able to encounter the ordinary risk of transportation, but also that it must be perfect in all its parts." 4 R. C. L., p. 682. See, also, 4 Elliott on Railroads, 1475; Beard v. Illinois Cent. Ry. Co., 79 Ill.

518, 44 N. W. Rep. 800; Forrester & Co. v. Southern R. Co., 147 N. C. 553, 61 S. E. Rep. 524; Empire Transportation Co. v. Wamsutta Oil Co., 63 Pa. St. 14; Louisville & N. R. Co. v. Dies, 91 Tenn. 177, 18 S. W. Rep. 266; New York, P & N. R. Co. v. Cromwell, 98 Va. 227, 35 S. E. Rep. 444. A failure on the part of the defendant carrier to provide a suitable and safe car for the transportation of the turpentine having undertaken to carry it and holding itself out as a carrier of such commodity would be a breach of its common law duty and any loss of the turpentine attributable to the unsuitableness, unfitness or defective condition of the car would be within the meaning of the Act of Congress a loss or damage caused by the carrier, or an act of negligence on its part.

What effect upon the carrier's liability would have been produced by a contract between the shipper and the carrier, whereby the former agreed to and did furnish the car, or inspected it and accepted it as suitable for the purpose as furnished by the railroad, or the car having been supplied by a third person was used by the railroad and rented by the shipper as suitable and fit for the transportation of the turpentine? The carrier will not be permitted to contract against its own negligence. Its duty is to supply suitable cars as much so as it is to supply a safe track and suitable engines and competent employees. If a common carrier would be permitted by contract to relieve itself of the duty of supplying a suitable car there is no reason why it should not by contract protect itself from the omission of duty to supply a suitable engine, or safe roadbed or track, or competent employees. It is universally conceded that the carrier can not by contract protect itself from the consequences of its own negligence. Therefore no arrangement, under-

standing, agreement or scheme between the shipper and carrier will be given the effect of relieving the carrier from the consequences of its own negligence. What the carrier cannot directly accomplish by contract it cannot by indirection accomplish. See Louisville & N. R. Co. v. Dies, *supra;* Forrester & Co. v. Southern R. Co., *supra;* Pierce Co. v. Wells Fargo & Co., 236 U. S. 278, 35 Sup. Ct. Rep. 351; Santa Fe, P. & P. R. Co. v. Grant Bros. Const. Co., 228 U. S. 177, 33 Sup. Ct. Rep. 474; Adams Exp. Co. v. Croninger, *supra.* See numerous authorities cited in 10 C. J. 154, 155; 4 R. C. L. 767; Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 South. Rep. 377; Summerlin v. Seaboard Air Line Ry., 56 Fla. 687, 47 South. Rep. 557.

The pleadings and the evidence in this case differentiate it from those few cases referred to in the brief of counsel for defendant whereby under a distinct agreement by the shipper to assume the risk of the sufficiency of a car furnished by him for a particular shipment the carrier was held to be not liable for loss of goods due to defects in the car. See Cleveland, C. C. & St. L. Ry. Co. v. Louisville Tin & Stove Co., 33 Ky. L. Rep. 924, 111 S. W. Rep. 358, 17 L. R. A. (N. S.) 1034, and cases cited in the note. In this case the car was selected by what appears to have been a kind of general understanding between the railroad, the car company and the shipper that it was suitable for the purpose of transporting kerosene oil, turpentine and such material therein in bulk. We think that the common law duty of the carrier to provide such a car free from defects, one in all respects adapted to the purpose, one able to encounter all the risks of transportation and perfect in all its parts, was not taken from it by the arrangement between the shipper, the car company and

the defendant set out in the pleas and replication and shifted to the shoulders of the shipper. That the liability of the defendant for loss resulting from any defect in the car was not affected by the arrangement, and it became responsible for the loss of the turpentine under the state of facts set out in the pleadings and shown to exist by the evidence.

The refusal of the court to permit the defendant to file a rejoinder to the first replication of the plaintiff was not error, because the facts therein set out in view of what has been written in this opinion in nowise constituted a defense or reply to the plaintiff's replication.

The remaining assignments of error attack the propriety of instructions given to the jury and the court's action in refusing others requested by the defendant; also the sufficiency of the evidence to support the verdict. The instructions given by the court were in line with the views expressed in this opinion concerning the defendant's liability. They might even be said to have favored the defendant in apparently placing some slight duty upon the plaintiff to have inspected the car for defects. The instructions refused were not in harmony with the views herein expressed, and the evidence was amply sufficient to show negligence in the defendant in the matter of furnishing a car unfit, unsuitable to encounter the ordinary risk of transportation and because of some defect in the car or careless handling of it, the contents were lost.

We have discovered no error in the record, so the judgment is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, JJ., concur.